UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JAN 10  AM 10: 20

LORETTA G. WHYTE
CLERK

GENERAL ELECTRIC CAPITAL )
CORPORATION, )
 )
Plaintiff, )   CIVIL ACTION NO. 00-0370
 )
v. )   SECTION "J"
 )
UNITED STATES OF AMERICA )
through THE UNITED STATES )
COAST GUARD, )
 )   MAGISTRATE "4"
 )
Defendant. )
_____)

DEFENDANT'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, United States of America, herewith responds in opposition to Plaintiff's

Motion for Partial Summary Judgment, filed herein on December 19, 2000.  Upon joint motion

of the parties, the Court extended the hearing date on Plaintiff's Motion to January 17, 2001, and

indicated it would hear the Motion on the briefs.

Defendant's Counter-Statement of the Facts

Defendant agrees with most of the facts stated in Plaintiff's Statement of Facts.  (Where

there is a minor disagreement, as for example the date of an occurrence which is not material,

defendant has noted that difference in its Statement of Disputed Issues, but will not necessarily

re-state it here.)

Plaintiff disagrees slightly with plaintiff's statement that the Original ENERGY VII

Abstract reflected that there were no existing mortgages, maritime liens or other encumbrances

of record against the vessel. Although this statement is technically correct, the abstract (Plaintiff's Exhibit A-1) reflected a mortgage dated December 4, 1994, as being filed on June 7, 1995, granted by Arnoult Equipment & Construction, Inc. in favor of WRT Energy Corporation, and that said mortgage had been "terminated" on November 2, 1995, but without any satisfaction of mortgage being filed.

The factors that GECC may have relied upon in making its loan of $656,625 to AEC are matters not within the knowledge of defendant. Defendant does not dispute, at this point, that GECC relied, at least in part, on the abstracts of title. Whether GECC's reliance upon the abstract pertaining to ENERGY VII was reasonable, given the circumstances, is a matter which the Court must decide based upon facts and the relevant statutes and regulations addressed herein.

Defendant agrees that WRT and GECC consummated a settlement between them as to the proceeds of the ENERGY VII remaining in the registry of the Court. Plaintiff implies that the Coast Guard gave its "approval" to the proposed settlement, but there is no evidence adduced in support of this statement.

Defendant agrees that on or about November 11, 1997, WRT filed a complaint of intervention in the JANE R. action, alleging it was the holder of a promissory note executed by AEC on May 18, 1995 and secured by a fleet mortgage executed by AEC on the same date. However, WRT's promissory note and mortgage, as reflected in the Coast Guard's documentation file, were not executed by AEC. They were executed by an individual on behalf of a company called "AEC/Energy Marine, Inc." (See Exhibit "A" hereto.)

Defendant disagrees with the statement, "According to the Coast Guard's revised JANE R. Abstract, the WRT Mortgage No. 2 outranked the prior recorded but later dated GECC Mortgage." The abstract of title, itself, is only a recitation of documents filed and recorded with the Coast Guard, and makes no statement as to whether one lien outranks another.

Defendant agrees that WRT Mortgage No. 2 was invalid because, contrary to Coast Guard regulations, it had been granted by AEC/Energy Marine, Inc., a party that was not then the owner of record of the JANE R. However, the owner of record as of the date of recording of the WRT Mortgage No. 2 (June 7, 1995) was not AEC Energy, Inc., as stated in Footnote 2 of the Plaintiff's Memorandum, but rather J.R. Rosson, Inc. (See, Plaintiff's Exhibit C-3.)

### Discussion

I.   THE GRAVAMEN OF PLAINTIFF'S COMPLAINT IS THE TORT OF MISREPRESENTATION, OVER WHICH THE COURT LACKS SUBJECT MATTER JURISDICTION.

Despite plaintiff's attempt to now characterize its cause of action as a breach of an alleged "duty to properly maintain the Ship Mortgage records", its Complaint clearly evidences a cause of action based on a misrepresentation, a cause of action as to which the United States has not waived its sovereign immunity. Therefore, the Court lacks subject matter jurisdiction. See, Defendant's Motion to Dismiss and/or for Summary Judgment, filed December 19, 2000.

As set forth in the Complaint, plaintiff claims that the abstracts of title issued to it by the Coast Guard contained inaccurate information about the status of prior mortgages on the two vessels, the M/V ENERGY VII and the M/V JANE R. (formerly "ENERGY XI"), and that it relied on these abstracts. See Complaint, ¶¶ V, XXII, XXV, XXXVI.

-3-

Plaintiff does not claim that it suffered any damages, until the Coast Guard, on or about March 1, 1996, sent it allegedly inaccurate abstracts of title, on which it relied. Therefore, despite the fact that plaintiff now tries to characterize its tort as based on breach of an independent duty to maintain the Ship Mortgage records, its damages flowed from, and would not have occurred without, the transmission of information from those records through the abstracts of title.

Since, as shown in Defendant's prior Motion to Dismiss and/or for Summary Judgment, the Court lacks subject matter jurisdiction over claims of misrepresentation, the Court must dismiss on this threshold issue, and need not reach the issues of whether there was, in fact, a misrepresentation; whether there was a duty to plaintiff arising out of the recordation statute; whether there was a breach of that duty; and whether any damages flowed from the breach.

II.   THERE WAS NO MISREPRESENTATION.

Even if the Court should reach the merits of this claim, the evidence adduced does not show a misrepresentation.

### A.  There Was No Misrepresentation Involved in the JANE R.

Defendant argued in its previous Motion to Dismiss, that the facts alleged in the Complaint did not, on their face, support a claim for misrepresentation as to the JANE R. The facts adduced in support of the Motion for Partial Summary Judgment, fare no better.

On February 27, 1996, the Coast Guard issued an abstract of title for the M/V JANE R. (Plaintiff's Exhibit A-2). This abstract reflected a mortgage granted by J. R. Rosson, Inc., the record owner, in 1991 to Delta Bank & Trust Company ["Delta"], but listed no other outstanding

mortgages. GECC proceeded to obtain a satisfaction of mortgage from Delta (Plaintiff's Exhibit 3-A). It then lent money to AEC.[1]

When plaintiff proceeded to foreclose on the JANE R. mortgage, it allegedly first discovered that WRT claimed a prior mortgage on the vessel, when WRT intervened in the foreclosure action. However, the mortgage WRT held was executed by a company called "AEC/Energy Marine, Inc." (Exhibit "A" hereto; Plaintiff's Exhibit C-3). This company was never, at any time, listed as the owner of record of the JANE R. (See, Plaintiff's Exhibit A-2; Plaintiff's Exhibit C-3.)

On cross-motions filed by both parties, the Court in the JANE R. foreclosure matter, held that WRT never had a valid mortgage on the JANE R., because the mortgagor was not the owner of record. For the same reason, the WRT mortgage was ineligible for recording under 46 CFR § 67.233(a)(1). Hence, the fact the Coast Guard did not list it on the abstract of title as of February 27, 1996, was not a misrepresentation. And, since the Court invalidated the WRT mortgage, GECC did not lose any part of its collateral, the vessel JANE R.

### B. There was no Misrepresentation as to the ENERGY VII

There also was no misrepresentation as to the ENERGY VII. The abstract of title issued to GECC on March 1, 1996, showed that WRT's mortgage was recorded on June 7, 1995, and "terminated" on November 2, 1995 (See, Plaintiff's Exhibit A-1). Under the regulations pertaining to termination, the filing of an instrument is subject to termination if "the instrument

---

[1] It is not clear whether plaintiff relied on the abstract for information that AEC was the owner of the JANE R. If it did, it was clearly not entitled to do so, because AEC was listed nowhere on the abstract issued on February 27, 1996. (Plaintiff's Exhibit A-2.)

cannot be recorded because [it] is not in substantial compliance with the applicable regulations in

this part. . ." 46 C.F.R. § 67.217. And, as shown above, a mortgage is not eligible for filing

under 46 C.F.R. § 67.233(a)(1) if the mortgagor does not hold legal title to the vessel.

The WRT mortgage on ENERGY VII was executed by "Arnoult Equipment &

Construction, Inc." on December 4, 1994 (Exhibit "B" hereto).. However, the record owner of

ENERGY VII as of that date was "Arnoult Equipment and Construction Company, Inc." See,

Plaintiff's Exhibit A-1. This variance between the name of the owner and mortgagor made the

WRT mortgage invalid and ineligible for recording. 46 C.F.R. § 67.233(a)(1). Because the WRT

mortgage was ineligible for recording, it was "terminated" on November 2, 1995.[2] Hence, as in

JANE R., there was no misrepresentation as to the existence of a valid mortgage. GECC,

however, did not litigate that issue, but settled it with WRT, each party accepting 50% of the

proceeds.[3]

Even if GECC interpreted the ENERGY VII abstract as conveying the information that

"there were no existing mortgages, maritime liens or other encumbrances of record against the

vessel," Plaintiff's Memorandum at 2, GECC's reliance was unreasonable. As of March 1, 1996,

GECC was on notice that there was a prior mortgage to WRT which was filed on June 7, 1995,

and "terminated" on November 2, 1995. As shown above, the regulations pertaining to ship

_____

[2] Although the "termination" was subsequently reversed by the Coast Guard, the reversal was not because the document was originally eligible for recording, but because the procedural requirements for a termination were not complied with under 46 C.F.R. § 67.217 (termination after filing) or 46 C.F.R. § 67.261 (removal after recording).

[3] There was apparently also an issue as to whether the mortgage was supported by valid consideration.

mortgages provide that a mortgage is subject to termination if not in substantial compliance with the applicable regulations. Since there was no recorded satisfaction of that mortgage, or other reason for termination, GECC should have realized that something was "amiss" and requested further information from the Coast Guard before lending $656,625 to AEC.

III.    THE COAST GUARD BREACHED NO ACTIONABLE DUTY TO THE PLAINTIFF.

Plaintiff asserts that "the Coast Guard breached its duty to properly maintain the Ship Mortgage records", citing the repealed Ship Mortgage Act of 1920, 46 U.S.C. § 911 and the regulations at 46 C.F.R. 67.200 et seq.

In making this assertion, GECC cites a provision of the former Ship Mortgage Act, 46 U.S.C. § 941 (repealed, 1989), which, as it points out, "directly addressed the liability of the United States for indexing errors." Incredibly, however, it asserts that "the law has not changed", Plaintiff's Memorandum at 10.

A portion of the legislative history directly addresses the continued vitality of provisions of the former Ship Mortgage Act:

> The Committee wants to make it clear. . .that the bill reported does in fact make a great many substantive changes to the present law. . . .The Committee intends and hopes that the interpretation of the laws as codified and enacted by this bill will be based on the language off [sic.] the bill itself. The bill, as reported, is based on that premise. There should, therefore, be little or no occasion to refer to the statutes being repealed to interpret the provisions of this bill.
> The Committee also feels, as the courts have held, that the literal language of the statute should control the disposition of the cases. There is no mandate in logic or case laws for reliance on legislative history to reach a result contrary to the plain meaning of the statute, particularly where that plain meaning is in no way unreasonable.

H.R. Rep. 100-918, set forth following 46 U.S.C.A. § 31343 (2000 pamphlet, at pp. 739-40) [Emphasis supplied.]  This section merely restates familiar principles of statutory construction.

Former 46 U.S.C. § 941(c) was a separate and distinct waiver of sovereign immunity for a specific cause of action against the government.  Waivers of sovereign immunity are to be strictly construed.  United States v. Mitchell, 445 U.S. 535, 538 (1980).  Hence, the repeal of a waiver of sovereign immunity must be given great respect.  It is a decision to remove the statute entirely as a basis for governmental liability, either directly or indirectly.  In short, the provision must be given no further effect, even as a guide to interpretation of other, independent waivers.

The legislative history cited by plaintiff, relating to this repeal, does not expand the scope of the Federal Tort Claims Act ["FTCA"].  It merely clarifies that the particular governmental function involved–the filing and recording of instruments–is nondiscretionary.  Therefore, presumably, the "discretionary function exception" to the FTCA, 28 U.S.C. § 2680(a), does not apply.  However, the government is not here invoking the discretionary function exception.  Rather, it is invoking a separate and independent exception, the "misrepresentation exception" codified at 28 U.S.C. § 2680(d).  Whether the "misrepresentation exception" would have applied to actions under the former 46 U.S.C. § 941(c) is a question not now before this Court–but the exception clearly continues to apply, as it did before, to actions brought under the FTCA.  Nothing in either the present statute or the legislative history suggests a contrary result.

In the absence of a separate provision which explicitly waives sovereign immunity (like former § 941(c)), the Court cannot carve out liability on the basis of the failure of a federal actor to follow the requirements of a statute.  The FTCA "cannot apply where the claimed negligence arises out of the failure of the United States to carry out a statutory duty in the conduct of its own

-8-

affairs." <u>United States v. Smith</u>, 324 F.2d 622, 624-5 (5th Cir. 1963). Similarly, a federal

regulation alone can never establish a duty under the FTCA. <u>Tindall v. United States</u>, 901 F.2d

53, 56 n. 8 (5th Cir. 1990). Thus, no liability to the public arises out of a breach of a <u>federal</u>

statute or regulation, unless the statute itself contains language conferring a remedy.

III.    <u>THERE IS NO LIABILITY BY ANALOGY TO LOUISIANA LAW</u>

    Plaintiff suggests that certain provisions of Louisiana law are applicable to this case and

establish the government's liability under the FTCA.

    As stated above, the misrepresentation exception to the FTCA precludes this Court from

even reaching the question of liability under state law. However, if the Court should reach this

question, the provisions cited do not cover this situation.

    Plaintiff cites a provision of the Louisiana Civil Code providing for general <u>respondeat</u>

<u>superior</u> liability. Under La. Civ. Code art. 2320: "Masters and employers are answerable for the

damage caused by their servants and overseers, in the exercise of the functions in which they are

employed." However, this provision does not create a duty, but merely designates persons who

are answerable for the negligence of another. <u>See</u>, <u>Butts Feed Lots, Inc. v. United States</u>, 690

F.2d 669 (8th Cir. 1982) [general state law permitting damages for "the unlawful act or omission

of another" does not create a duty under state law]; <u>Smith v. United States</u>, 324 F.2d 622 (5th

Cir. 1963) [general "prima facie Tort Statute" under Georgia law not specific enough to establish

liability under FTCA].

    Also, the provision relied upon must provide an analogy to the liability of a <u>private</u>

person or corporation under state law. 28 U.S.C. §§ 1346(b), 2674. <u>Rayonier v. U.S.</u>, 352 U.S.

315, 318 (1957); <u>Leleux v. U.S.</u>,178 F.3d 750, 759 (5th Cir. 1999); <u>Tindall</u>, <u>supra</u>, 901 F.2d at 56

n. 8.. Therefore, the liability of state public officers under state law cannot provide the necessary

private-person analogy to support liability against similar public officers of the United States.

Again, the Smith case, supra, is dispositive:

> . . .We think that [the legislative history of the FTCA] indicates clearly that
> Congress did not intend to permit the suit against the United States for the
> contract price of a construction project remaining unpaid by the contractor merely
> because under the laws of some of the states a state or municipality might be
> subject to such liability for the protection of such unpaid creditors on state public
> contracts.

Id., 324 F.2d at 625.[4] Thus, plaintiff's citation to La. R.S. 9:5214, covering the liability of

recorders of mortgages, is inapposite.

Conclusion

The plaintiff's claims are for misrepresentation, and are therefore not actionable under the

FTCA, 28 U.S.C. § 2680(d). Even if they were actionable, there was no misrepresentation under

the facts of this case. Nor does the recording statute or regulations provide a separate waiver of

sovereign immunity for the failure of Coast Guard officials to comply with the statute. Finally,

the provisions of Louisiana law cited by plaintiff do not provide the requisite "private person

analogy" which is necessary for liability under the FTCA. Accordingly, the plaintiff's Motion

for Partial Summary Judgment must be denied, and the Complaint must be dismissed.

Dated: January 9, 2001.

---

[4] It is true that liability is not precluded merely because private individuals do not engage
in the identical governmental activity giving rise to the claim. Indian Towing Co. v. United
States, 350 U.S. 61, 64 (1955). The claimant need only show that there is private liability "under
like circumstances", 28 U.S.C. § 2674. Louisiana does recognize a cause of action for negligent
misrepresentation, Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007, 1014 (La. 1993), but this
cause of action is specifically excepted by 28 U.S.C. § 2680(d).

-10-

Respectfully submitted,

DAVID W. OGDEN
Assistant Attorney General

EDDIE J. JORDAN, JR.
United States Attorney

STEVENS E. MOORE
Assistant U.S. Attorney

DAMON C. MILLER, Trial Attorney
U.S. Department of Justice
Torts Branch, Civil Division
P.O. Box 14271
Washington, D.C. 20044-4271
Telephone: (202) 616-4047

Attorneys for Defendant
United States of America

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant's Response in Opposition to

Plaintiff's Motion for Partial Summary Judgment was telefaxed and mailed on this the _9_ day of

January, 2001 to the following counsel of record:

Henry A. King, Esq.
Michael L. Vincenzo, Esq.
King, LeBlanc & Bland, L.L.P.
201 St. Charles Avenue, Suite 3800
New Orleans, LA 70170
FAX: (504) 582-1233

DAMON C. MILLER

-11-

USCG Vessel Documentati... Ifice New Orleans

Recorded in Book ~~9786~~ Inst. /08

~~USCG Vessel Documentation~~
~~Office New Orleans~~
~~Filing Cancelled/Terminated~~
Date ~~11-2-95~~

CORRECTED AT
NVDC ON 12NOV97

Documentation Officer    H. A. STERLING

THIS PREFERRED MORTGAGE, on the vessel(s) "See Exhibit A"

dated _MAY 18, 1995_ ,

Amount of Mortgage $3,400,000.00

Maturity Date _March 18, 2004_ ,

and made by AEC/Energy Marine, Inc.,(hereinafter called
"Owner"), to WRT ENERGY CORPORATION, a corporation of the
State of Texas, (hereinafter called "Mortgagee"),

WITNESSETH:

WHEREAS, the Owner, Mortgagor herein, is the sole owner
of the whole of the vessel (if more than one vessel is
mortgaged hereunder, the term "vessel" means each such vessel)
hereinafter named and described, and is justly indebted to the
Mortgagee, as evidenced by promissory note dated _MAY 18,
1995_ , in the principal amount of $3,400,000.00, a copy of
which is attached hereto and made part hereof and has agreed
to give this Mortgage as security, and has authorized and
directed the execution and delivery hereof,

NOW THEREFORE, in consideration of the premises and for
other good and valuable considerations, receipt of all of
which is hereby acknowledged, and to secure payment of said
indebtedness and interest and other sums that hereafter may
become due pursuant hereto and the performance of all
covenants hereof, Owner by these presents mortgages and
conveys unto Mortgagee, its successors and assigns, the whole
of the Jack-Up Barge named below and further described in her
last marine document(s) issued and identified as follows:

NAME                                OFFICIAL NUMBER

     * See Attached Exhibit A *

OWNER/MORTGAGOR(S) ADDRESS:

AEC/ENERGY MARINE, INC.
POST OFFICE BOX 3061
HARVEY, LOUISIANA  70059

MORTGAGEE(S) ADDRESS:

WRT ENERGY CORPORATION
4200 RESEARCH FOREST DRIVE
SUITE 500
THE WOODLANDS, TEXAS  77380

together with all masts, boilers, cables, engines, machinery,
bowsprits, sails, rigging, boats, anchors, chains, tackle,
apparel, furniture, fittings, tools, pumps, equipment and

ENCLOSURE ( )
PAGE 1 OF 10
FOR OFFICIAL USE ONLY
Public Availability to be
Determined Under 5 USC 552

supplies, and all fishing and other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed therefrom, all of which shall be deemed to be included in the term "vessel" herein, and said document(s) being deemed included herein by reference;

TO HAVE AND TO HOLD all and singular the above described vessel unto Mortgagee, its successors and assigns, forever;

PROVIDED, HOWEVER, that if Owner, his heirs, executors, administrators or its successors or assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a vessel as the term is used in the Ship Mortgage Act, 1920.

Owner agrees to pay said indebtedness with interest thereon as herein and in said note provided, and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject thereto.

ARTICLE I. - PARTICULAR COVENANTS OF OWNER

Owner covenants as follows:

1. Owner is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her marine document, which Owner shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof, and of the good faith affidavit filed herewith and of said note has been duly taken. If a corporation, Owner is duly organized and is and shall continue in good standing under the laws of the State of Louisiana and authorized to do business and in good standing in any other State wherein the nature of Owner's activities requires it to be so authorized.

2. Owner lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may hereinbelow be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all personal whomsoever. Owner shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of Owner against Mortgagee and/or assignee under any past or future transaction.

3. Owner shall at his (its) own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation not exceeding the amount insured and, in the aggregate as to all vessels mortgaged herein, in at least the amount of the unpaid principal balance of this Mortgage, and shall maintain insurance to cover protection and indemnity risks, tower's liability risks if the vessel performs towage, employees' compensation and/or other risks and liabilities from time to time specified by Mortgagee. All insurance shall be taken out in the name of Owner and shall by its terms be payable to Mortgagee for account of Mortgagee and Owner as their respective interests may appear, and all policy forms, underwriters and amounts shall be subject to Mortgagee's approval. Owner shall notify, and shall request underwriters and amounts shall be subject to Mortgagee's approval. Owner shall notify, and shall request underwriters to agree reasonably in advance to notify, Mortgagee of any cancellation of or material change in any insurance coverage. All policies, binders and cover notes shall be delivered to Mortgagee with evidence satisfactory to it that all premiums and other charges therefor have been fully paid. Owner shall maintain all such insurance unimpaired by any act, breach of

ENCLOSURE ( 2 )
PAGE 2 OF 10
FOR OFFICIAL USE ONLY
Public Availability to be
Determined Under 5 USC 552

warranty or otherwise.

4.  Owner shall comply with and not permit the vessel to be operated contrary to any provision of the laws, treaties, covenants, rules regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department or agency thereof.  Owner shall do everything necessary to establish and maintain this Mortgagee as a Preferred Mortgage on said vessel.

5.  Neither the Owner, Agent, Master or any Charterer of the vessel has or shall have any right, power or authority to create, incur or permit to be place or imposed on the vessel or any part thereof any lien whatsoever other than to the Mortgagee or for crew's wages or salvage.  This provision and paragraphs 6 and 9 hereof shall be included in any charter party with respect to the vessel.

6.  Owner and any Charterer shall place and keep prominently in the pilot house (if any), chart room or Marter's cabin or elsewhere on the vessel any notice of the Mortgage required by Mortgagee, and shall keep a proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel and to Mortgagee on demand.

7.  Owner shall pay when due all taxes, assessments, governmental charges, fines and penalties of lawfully imposed and promptly discharge any and all liens whatsoever upon the vessel.  Owner shall at his (its) own expense at all times maintain the vessel in thorough repair and working order and shall make all proper renewals and replacements.

8.  If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel therefrom, and in any event within fifteen (15) days after such libel, attachment, detention, seizure, levy or taking into custody.

9.  Owner and any Charterer shall at all times afford Mortgagee complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owner's or Charterer's related accounts and records;  and shall certify quarterly and, if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

10. Owner shall not, without the prior written consent of Mortgagee, sell, mortgage, or charter the vessel or any interest therein, and then only to persons and for uses lawful for American vessels and provided said insurance be unaffected thereby or adequately replace; nor, if a corporation, merge or consolidate with any other person, firm or corporation, or dissolve.

11. From time to time Owner shall execute and deliver such other and further instruments and assurance as in the opinion of Mortgagee's counsel may be required to subject the vessel more effectually to the lien hereof and to the payment of said indebtedness and for operation of the vessel as herein provided, and to effectuate sales as provided in paragraph (C) of Section 1 of Article II.

ARTICLE II. - DEFAULT

1.  In any one or more of the following events, herein termed "events of default," viz.:

ENCLOSURE ( 2 )
PAGE 3 OF 10
FOR OFFICIAL USE ONLY
Public Availability to be
Determined Under 5 USC 552

(a)  Default in the punctual payment of the principal of

the note secured hereby or any installment thereof, or in the due and punctual performance of any provision of Section 3, 4, 5, 6, 8 and 10 of Article I hereof, or attempt to violate Section 4 or 10 of Article I hereof, or default continuing for fifteen (15) days in the performance of any other covenant herein; or

(b)  Commission of an act of bankruptcy by Owner or approval by any Court of a Petition or Answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or appointment of a receiver for Owner or any of Owner's property or the taking by any Court of any action comparable thereto; or rendition of a final Judgment against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective violation of any provision of this Mortgage, Mortgagee is in danger of losing said bet, or any part thereof, by delaying collection thereof until the time above limited for the payment thereof;

then, and in every such case, Mortgagee may:

(A)  Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith:

(B)  Recover Judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder; and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; and/or

(C)  Retake the vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and Mortgagee may become the purchaser.

For such purpose Mortgagee and its agents are hereby irrevocably appointed the true and lawful attorneys of Owner in his (its) name and stead to make all necessary transfers of the vessel thus sold.

2.  In the event that the vessel shall be arrested or detained by any officer of any Court or by any other authority, Owner hereby authorized Mortgagee, its officers, representatives and appointees, in the name of Owner or of Mortgagee, to receive or to take possession thereof, and to defend any action and/or discharge any lien.

3.  Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee.  No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default.  In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel, and to obtain a decree ordering and directing the sale and disposition thereof.

ENCLOSURE ( 2 )
PAGE 4 OF 10
FOR OFFICIAL USE ONLY
Public Availability to be
Determined

4.  The net proceeds of any judicial or other sale, and any lease, charter, management, operation or other use of the vessel by Mortgagee, of any claim for damages, of any Judgment, and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit ) shall be applied as follows:

FIRST:  To the payment of all attorneys' fees, as provided in said note, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the note secured hereby, with interest on all such amounts at the rate of 6.00% per annum; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed;

SECOND:  To the payment of all interest, to date of payment, on the note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment next of any or all matured installments of principal and then of any or all unmatured installments of principal in the inverse order of their maturity.  Mortgagee shall be entitled to collect any deficiency from Owner.  Owner shall be entitled to any surplus, subject to set-off in favor of Mortgagee for any other indebtedness of Owner.

5.  All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Owner on demand with interest at 6.00% per annum and until so paid shall be a debt due from Owner to Mortgagee secured by the lien hereof.  Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Owner of any obligation or default with respect thereto.

### ARTICLE III. - POSSESSION UNTIL DEFAULT

Until one or more of the events of default hereinbefore described, Owner shall be permitted to retain actual possession and use of the vessel.

### ARTICLE IV. - SUNDRY PROVISIONS

All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee.  If more than one person is the Owner herein, "his" shall mean "their".

Owner, Mortgagor herein, agrees that the oil screw or vessel will not be removed from the continental limits of the United States of America or the Gulf of Mexico without prior written consent of the Mortgagee.

IN WITNESS WHEREOF, on the day and year first above written, Owner has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name (and its corporate seal to be affixed hereto) by its proper officers thereunto duly authorized.

WITNESSES:                         AEC/ENERGY/MARINE, INC.

                                   BY:
                                        JAMES L. ARNOULT, SR.

                                   TITLE:    PRESIDENT

ENCLOSURE ( )
PAGE _5_ OF _10_
FOR OFFICIAL USE ONLY
Public Availability to be
Determined Under 5 U.S.

ACKNOWLEDGMENT

STATE OF LOUISIANA, PARISH OF _LAFAYETTE_ , as:

On this _18th_ day of _MAy_ , 1995, before me personally came and appeared JAMES L. ARNOULT, SR., to me known, who being by me duly sworn, did depose and say that he resides at _P.O. Box 518_ , City of Harvey, Parish of _Jefferson_ , State of Louisiana; that he is the President of AEC/ENERGY MARINE, INC., the corporation described in and which executed the foregoing mortgage; that he knows the seal of said corporation; that the seal affixed to said mortgage is the seal of said corporation and was affixed by order of its Board of Directors; and he acknowledged to me that he executed said mortgage as such officer of said corporation; and that the same is the free and voluntary act and deed of said corporation and of himself as such officer thereof, for the uses and purposes herein expressed.

NOTARY PUBLIC

MY COMMISSION EXPIRES: _Upon My Death_

EXHIBIT A TO ACT OF PREFERRED SHIP MORTGAGE

| VESSEL NAME | OFFICIAL IDENTIFYING NUMBER |
|---|---|
| 1) M/V AEC ENERGY II (formerly George Grimmer) | 591909 |
| 2) M/V LATIN LADY | 536395 |
| 3) M/V CHERYL LYNN | 1030203 |
| 4) M/V ENERGY XI (formerly Jane R). | 648318 |
| 5) M/V WIREMASTER | 1030711 |

ENCLOSURE ( 2 )
PAGE 7 OF 10
FOR OFFICIAL USE ONLY
Public Availability to be
Determined Under 5 USC 552



$3,4000,000.00    M Ay 18 , 1995    HARVEY, LOUISIANA

I promise to pay to the order of WRT ENERGY CORPORATION

the sum of THREE MILLION FOUR HUNDRED THOUSAND AND NO/100

($3,400,000.00) DOLLARS, payable as follows:

IN ONE HUNDRED SIX (106) MONTHLY INSTALLMENTS, THE FIRST OF
SAID INSTALLMENTS DUE THIRTY (30) DAYS FROM THE DATE HEREOF
AND REMAINING INSTALLMENTS DUE ON THE SAME DAY OF EACH ENSUING
MONTH THEREAFTER, PAYMENTS ONE (1) THROUGH AND INCLUDING SIXTY
(60) IN THE AMOUNT OF THIRTY FIVE THOUSAND TWO HUNDRED FIFTY
AND NO/100 ($35,250.00) DOLLARS, PAYMENTS SIXTY ONE (61)
THROUGH AND INCLUDING ONE HUNDRED FIVE (105) IN THE AMOUNT OF
FIFTY-ONE THOUSAND NINE HUNDRED AND NO/100 ($51,900.00)
DOLLARS, AND PAYMENT ONE HUNDRED SIX (106) IN AN AMOUNT EQUAL
TO THE THEN OUTSTANDING PRINCIPAL AND INTEREST.

For value received, negotiable and payable without

defalcation or discount, with interest from date until paid at

the rate of 6.00% per annum, at the office of WRT ENERGY

CORPORATION, 4200 RESEARCH FOREST DRIVE, SUITE 500, THE

WOODLANDS, TEXAS 77380.

The makers, endorsers, guarantors and sureties hereby

waive presentment for payment, demand, protest and notice of

protest and non-payment and also all pleas of division and

discussion, and agree that this is a solidary obligation.

This note may be extended without notice and without affecting

the liabilities of any of the parties hereto.  If the maker or

makers should fail in business or should have filed against

them, or any of them, proceedings in involuntary bankruptcy or

for the appointment of a receiver, this note and all other

debts and obligations of the maker or makers direct or

contingent, shall immediately become due and payable.

If any one installment(s) on said note become due and

unpaid the entire indebtedness, including principal, interest,

attorney's fees and all other sums due hereunder, shall at

once become due and payable, at the option of the holder or

holders of said note, without notice or demand or putting in

default, the putting in default being especially waived.  The

failure to exercise this option shall not constitute a waiver

of the right to exercise the same in the event of any

ENCLOSURE ( 1 subsequent default.
PAGE 8 OF 10
FOR OFFICIAL USE ONLY
Public Availability to be
Determined Under 5 USC 552



If this note is placed in the hand of an attorney for collection, I will pay, in addition to the principal, interest and all other sums which may be due hereunder, a reasonable attorney's fee, which shall not be less than 25% of the aggregate amount due hereunder.

WITNESSES:                                    AEC/ENERGY MARINE, INC.

BY:
                                              JAMES L. ARNOULT,
                                              PRESIDENT


"NE VARIETUR"  for identification
with an Act of MORTGAGE, PREFERRED Ship MORTGAGE
AND UCC ~~statement~~ passed before me this
18TH day of MAY , 1998.

NOTARY PUBLIC

ENCLOSURE ( 2 )
PAGE 9 OF 10
FOR OFFICIAL USE ONLY
Public Availability to be
Determined Under 5 USC 552

CERTIFIED RESOLUTION OF THE BOARD OF DIRECTORS OF
AEC/ENERGY MARINE, INC.

WHEREAS, AEC/ENERGY MARINE, INC. has entered into a
certain Mortgage by AEC/ENERGY MARINE, INC. to WRT ENERGY
CORPORATION in the sum of $3,400,000.00 and a certain Preferred
Ship Mortgage by AEC/ENERGY MARINE, INC. to WRT ENERGY
CORPORATION in the sum of $3,400,000.00, a draft of which
documents and attachments have been presented to the Board of
Directors of the Corporation for its approval;

RESOLVED, that the President, Vice President and any
other officer of the Corporation, or any of them (sometimes
hereinafter referred to collectively as the "Officers" and
individually as an "Officer") be, and each of them is, hereby
authorized, empowered and directed to execute any and all
documents concerning the above mentioned documents.

RESOLVED FURTHER, that the Officers are, and each of them
is, hereby authorized to execute such other documents,
consents, notices, agreements, certificates, in said Officer's
sole discretion, in order to effect the purposes of the
transactions contemplated thereby;

RESOLVED FURTHER, that any and all documents, instruments
and agreements executed by any of the Officers pursuant to the
authority delegated herein may contain such terms, conditions,
stipulations, or provisions as such Officer may approve and
deem necessary or appropriate, such approval to be
conclusively evidenced by his execution thereof;

We, the undersigned, hereby certify that the foregoing
constitutes a complete and accurate copy of the Resolution of
the Board of Directors of AEC/ENERGY MARINE, INC., properly
adopted by the Corporation at a meeting of the Board of
Directors of the Corporation, duly convened and held on the
18th day of MAY , 1995, and that the same have not
been rescinded, repealed or amended, and remain in full force
and effect.

Date: MAY 18, 1995

Date: MAy 18, 1955

Date: MAY 18, 1995

ENCLOSURE ( I )
PAGE 10 OF 10
FOR OFFICIAL USE ONLY
Public Availability to be
Determined Under 5 USC 552

THIS PREFERRED MORTGAGE, on the vessel(s)"M/V AEC ENERGY VII"

dated December 4, 1994,

Amount of Mortgage $1,800,000.00

Maturity Date: October 4, 2003

and made by ARNOULT EQUIPMENT & CONSTRUCTION, INC.,

(hereinafter called Owner"), to WRT ENERGY CORPORATION, a

corporation of the State of Texas, (hereinafter called

"Mortgagee"),

### WITNESSETH:

WHEREAS, the Owner, Mortgagor herein, is the sole owner
of the whole of the vessel (if more than one vessel is
mortgaged hereunder, the term "vessel" means each such vessel)
hereinafter named and described, and is justly indebted to the
Mortgagee, as evidenced by promissory note dated December 4,
1994, in the principal amount of $1,800,000.00, a copy of
which is attached hereto and made part hereof and has agreed
to give this Mortgage as security, and has authorized and
directed the execution and delivery hereof,

NOW THEREFORE, in consideration of the premises and for
other good and valuable considerations, receipt of all of
which is hereby acknowledged, and to secure payment of said
indebtedness and interest and other sums that hereafter may
become due pursuant hereto and the performance of all
covenants hereof, Owner by these presents mortgages and
conveys unto Mortgagee, its successors and assigns, the whole
of the Jack-Up Barge named below and further described in her
last marine document(s) issued and identified as follows:

NAME | OFFICIAL NUMBER
---|---
M/V AEC ENERGY VII | 556463

OWNER/MORTGAGOR(S) ADDRESS:

ARNOULT EQUIPMENT & CONSTRUCTION, INC.
P.O. BOX 3061
HARVEY, LOUISIANA 70059

MORTGAGEE(S) ADDRESS:

WRT ENERGY CORPORATION
4200 RESEARCH FOREST DRIVE
SUITE 500
THE WOODLANDS, TEXAS  77380

together with all masts, boilers, cables, engines, machinery,
bowsprits, sails, rigging, boats, anchors, chains, tackle,
apparel, furniture, fittings, tools, pumps, equipment and

ENCLOSURE ( )
PAGE ___ OF 9
FOR OFFIC:   ::ILY
Public Availaunity to be
Determined Under 5 USC 552

USCG Vessel Documentation Office New Orleans
Recorded in Book ____, Inst. ____
Documentation Officer

supplies, and all fishing and other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed therefrom, all of which shall be deemed to be included in the term "vessel" herein, and said document(s) being deemed included herein by reference;

TO HAVE AND TO HOLD all and singular the above described vessel unto Mortgagee, its successors and assigns, forever;

PROVIDED, HOWEVER, that if Owner, his heirs, executors, administrators or its successors or assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a vessel as the term is used in the Ship Mortgage Act, 1920.

Owner agrees to pay said indebtedness with interest thereon as herein and in said note provided, and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject thereto.

ARTICLE I. - PARTICULAR COVENANTS OF OWNER

Owner covenants as follows:

1. Owner is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her marine document, which Owner shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof, and of the good faith affidavit filed herewith and of said note has been duly taken.  If a corporation, Owner is duly organized and is and shall continue in good standing under the laws of the State of Louisiana and authorized to do business and in good standing in any other State wherein the nature of Owner's activities requires it to be so authorized.

2. Owner lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may hereinbelow be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all personal whomsoever.  Owner shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of Owner against Mortgagee and/or assignee under any past or future transaction.

3. Owner shall at his (its) own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation not exceeding the amount insured and, in the aggregate as to all vessels mortgaged herein, in at least the amount of the unpaid principal balance of this Mortgage, and shall maintain insurance to cover protection and indemnity risks, tower's liability risks if the vessel performs towage, employees' compensation and/or other risks and liabilities from time to time specified by Mortgagee.  All insurance shall be taken out in the name of Owner and shall by its terms be payable to Mortgagee for account of Mortgagee and Owner as their respective interests may appear, and all policy forms, underwriters and amounts shall be subject to Mortgagee's approval.  Owner shall notify, and shall request underwriters and amounts shall be subject to Mortgagee's approval.  Owner shall notify, and shall request underwriters to agree reasonably in advance to notify, Mortgagee of any cancellation of or material change in any insurance coverage.  All policies, binders and cover notes shall be delivered to Mortgagee with evidence satisfactory to it that all premiums and other charges therefor have been fully paid.  Owner shall maintain all such insurance unimpaired by any act, breach of

ENCLOSURE (
PAGE 2 OF
FOR OFFIC:
Public Availability to be
Determined Under 5 USC 552

warranty or otherwise.

4. Owner shall comply with and not permit the vessel to be operated contrary to any provision of the laws, treaties, covenants, rules regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department or agency thereof. Owner shall do everything necessary to establish and maintain this Mortgagee as a Preferred Mortgage on said vessel.

5. Neither the Owner, Agent, Master or any Charterer of the vessel has or shall have any right, power or authority to create, incur or permit to be place or imposed on the vessel or any part thereof any lien whatsoever other than to the Mortgagee or for crew's wages or salvage. This provision and paragraphs 6 and 9 hereof shall be included in any charter party with respect to the vessel.

6. Owner and any Charterer shall place and keep prominently in the pilot house (if any), chart room or Marter's cabin or elsewhere on the vessel any notice of the Mortgage required by Mortgagee, and shall keep a proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel and to Mortgagee on demand.

7. Owner shall pay when due all taxes, assessments, governmental charges, fines and penalties of lawfully imposed and promptly discharge any and all liens whatsoever upon the vessel. Owner shall at his (its) own expense at all times maintain the vessel in thorough repair and working order and shall make all proper renewals and replacements.

8. If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel therefrom, and in any event within fifteen (15) days after such libel, attachment, detention, seizure, levy or taking into custody.

9. Owner and any Charterer shall at all times afford Mortgagee complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owner's or Charterer's related accounts and records; and shall certify quarterly and, if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

10. Owner shall not, without the prior written consent of Mortgagee, sell, mortgage, or charter the vessel or any interest therein, and then only to persons and for uses lawful for American vessels and provided said insurance be unaffected thereby or adequately replace; nor, if a corporation, merge or consolidate with any other person, firm or corporation, or dissolve.

11. From time to time Owner shall execute and deliver such other and further instruments and assurance as in the opinion of Mortgagee's counsel may be required to subject the vessel more effectually to the lien hereof and to the payment of said indebtedness and for operation of the vessel as herein provided, and to effectuate sales as provided in paragraph (C) of Section 1 of Article II.

ARTICLE II. - DEFAULT

1. In any one or more of the following events, herein termed "events of default," viz.:

ENCLOSURE (
PAGE  3   OF  9
FOR OFFIC:       ONLY
Public Availability to be
Determined Under 5 USC 552

(a) Default in the punctual payment of the principal of

the note secured hereby or any installment thereof, or in the due and punctual performance of any provision of Section 3, 4, 5, 6, 8 and 10 of Article I hereof, or attempt to violate Section 4 or 10 of Article I hereof, or default continuing for fifteen (15) days in the performance of any other covenant herein; or

(b)  Commission of an act of bankruptcy by Owner or approval by any Court of a Petition or Answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or appointment of a receiver for Owner or any of Owner's property or the taking by any Court of any action comparable thereto; or rendition of a final Judgment against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective violation of any provision of this Mortgage, Mortgagee is in danger of losing said bet, or any part thereof, by delaying collection thereof until the time above limited for the payment thereof;

then, and in every such case, Mortgagee may:

(A)  Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith:

(B)  Recover Judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder; and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; and/or

(C)  Retake the vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and Mortgagee may become the purchaser.

For such purpose Mortgagee and its agents are hereby irrevocably appointed the true and lawful attorneys of Owner in his (its) name and stead to make all necessary transfers of the vessel thus sold.

2.  In the event that the vessel shall be arrested or detained by any officer of any Court or by any other authority, Owner hereby authorized Mortgagee, its officers, representatives and appointees, in the name of Owner or of Mortgagee, to receive or to take possession thereof, and to defend any action and/or discharge any lien.

3.  Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee.  No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default.  In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel, and to obtain a decree ordering and directing the sale and disposition thereof.

ENCLOSURE (
PAGE 4    OF
FOR OFFICIAL USE ONLY
Public Availability to be
Determined Under 5 USC 552

4.  The net proceeds of any judicial or other sale, and any lease, charter, management, operation or other use of the vessel by Mortgagee, of any claim for damages, of any Judgment, and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit ) shall be applied as follows:

FIRST:  To the payment of all attorneys' fees, as provided in said note, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the note secured hereby, with interest on all such amounts at the rate of 6.00% per annum; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed;

SECOND:  To the payment of all interest, to date of payment, on the note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment next of any or all matured installments of principal and then of any or all unmatured installments of principal in the inverse order of their maturity.  Mortgagee shall be entitled to collect any deficiency from Owner.  Owner shall be entitled to any surplus, subject to set-off in favor of Mortgagee for any other indebtedness of Owner.

5.  All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Owner on demand with interest at 6.00% per annum and until so paid shall be a debt due from Owner to Mortgagee secured by the lien hereof.  Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Owner of any obligation or default with respect thereto.

ARTICLE III. - POSSESSION UNTIL DEFAULT

Until one or more of the events of default hereinbefore described, Owner shall be permitted to retain actual possession and use of the vessel.

ARTICLE IV. - SUNDRY PROVISIONS

All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee.  If more than one person is the Owner herein, "his" shall mean "their".

Owner, Mortgagor herein, agrees that the oil screw or vessel will not be removed from the continental limits of the United States of America or the Gulf of Mexico without prior written consent of the Mortgagee.

IN WITNESS WHEREOF, on the day and year first above written, Owner has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name (and its corporate seal to be affixed hereto) by its proper officers thereunto duly authorized.

WITNESSES:                           ARNOULT EQUIPMENT &
                                     CONSTRUCTION, INC.

                                     BY:
                                        JAMES L. ARNOULT, SR.
                                     TITLE:  PRESIDENT

ENCLOSURE (
PAGE 5   OF 9
FOR OFFICIAL USE ONLY
Public Availability to be
Determined Under 5 USC 552

ACKNOWLEDGMENT

STATE OF LOUISIANA, PARISH OF _LAFAYETTE_ , as:

On this __4th__ day of _December_ , 1994, before me personally came and appeared JAMES L. ARNOULT, SR., to me known, who being by me duly sworn, did depose and say that he resides at _P.O. Box 518_ , City of Harvey, Parish of _Jefferson_ , State of Louisiana; that he is the President of ARNOULT EQUIPMENT & CONSTRUCTION, INC., the corporation described in and which executed the foregoing mortgage; that he knows the seal of said corporation; that the seal affixed to said mortgage is the seal of said corporation and was affixed by order of its Board of Directors; and he acknowledged to me that he executed said mortgage as such officer of said corporation; and that the same is the free and voluntary act and deed of said corporation and of himself as such officer thereof, for the uses and purposes herein expressed.

NOTARY PUBLIC

MY COMMISSION EXPIRES: _Upon My Death_

ENCLOSURE ( 1 )
PAGE 6 OF 9
FOR OFFICIAL USE ONLY
Public Availability to be
Determined Under 5 USC 552



$1,800,000.00    *December 4, 1994*    HARVEY, LOUISIANA

I promise to pay to the order of WRT ENERGY CORPORATION

the sum of ONE MILLION EIGHT HUNDRED THOUSAND AND NO/100

($1,800,000.00) DOLLARS, payable as follows:

IN ONE HUNDRED SIX (106) MONTHLY INSTALLMENTS, THE FIRST OF
SAID INSTALLMENTS DUE THIRTY (30) DAYS FROM THE DATE HEREOF
AND REMAINING INSTALLMENTS DUE ON THE SAME DAY OF EACH ENSUING
MONTH THEREAFTER, PAYMENTS ONE (1) THROUGH AND INCLUDING SIXTY
(60) IN THE AMOUNT OF EIGHTEEN THOUSAND FIVE HUNDRED FIFTY-SIX
AND 70/100 ($18,556.70) DOLLARS, PAYMENTS SIXTY ONE (61)
THROUGH AND INCLUDING ONE HUNDRED FIVE (105) IN THE AMOUNT OF
TWENTY-SEVEN THOUSAND EIGHT HUNDRED FIVE AND 05/100
($27,805.05) DOLLARS, AND PAYMENT ONE HUNDRED SIX (106) IN AN
AMOUNT EQUAL TO THE THEN OUTSTANDING PRINCIPAL AND INTEREST.

For value received, negotiable and payable without

defalcation or discount, with interest from date until paid at

the rate of 6.00% per annum, at the office of WRT ENERGY

CORPORATION, 4200 RESEARCH FOREST DRIVE, SUITE 500, THE

WOODLANDS, TEXAS 77380.

The makers, endorsers, guarantors and sureties hereby

waive presentment for payment, demand, protest and notice of

protest and non-payment and also all pleas of division and

discussion, and agree that this is a solidary obligation.

This note may be extended without notice and without affecting

the liabilities of any of the parties hereto.  If the maker or

makers should fail in business or should have filed against

them, or any of them, proceedings in involuntary bankruptcy or

for the appointment of a receiver, this note and all other

debts and obligations of the maker or makers direct or

contingent, shall immediately become due and payable.

If any one installment(s) on said note become due and

unpaid the entire indebtedness, including principal, interest,

attorney's fees and all other sums due hereunder, shall at

once become due and payable, at the option of the holder or

holders of said note, without notice or demand or putting in

default, the putting in default being especially waived.  The

failure to exercise this option shall not constitute a waiver

of the right to exercise the same in the event of any

subsequent default.

ENCLOSURE (    )
PAGE 7    OF
FOR OFFICIAL USE ONLY
Public Availability to
Determined Under



If this note is placed in the hand of an attorney for collection, I will pay, in addition to the principal, interest and all other sums which may be due hereunder, a reasonable attorney's fee, which shall not be less than 25% of the aggregate amount due hereunder.

WITNESSES:

ARNOULT EQUIPMENT &
CONSTRUCTION, INC.

BY: _____
    JAMES L. ARNOULT,
    PRESIDENT

"NE VARIETUR" for identification
with an Act of Preferred Ship
Mortgage passed before me this
4th day of December, 1994.

_____
NOTARY PUBLIC

ENCLOSURE (  1  )
PAGE 8 OF 9
FOR OFFICIAL USE ONLY
Public Availability to be
Determined Under 5 USC 552

CERTIFIED RESOLUTION OF THE BOARD OF DIRECTORS OF
ARNOULT EQUIPMENT & CONSTRUCTION, INC.

WHEREAS, ARNOULT EQUIPMENT & CONSTRUCTION, INC. has
entered into a certain Preferred Ship Mortgage in the sum of
$1,800,000.00 by and between ARNOULT EQUIPMENT & CONSTRUCTION,
INC. and WRT ENERGY CORPORATION, a draft of which Mortgage and
attachments has been presented to the Board of Directors of
the Corporation for its approval;

RESOLVED, that the President, Vice President and any
other officer of the Corporation, or any of them (sometimes
hereinafter referred to collectively as the "Officers" and
individually as an "Officer") be, and each of them is, hereby
authorized, empowered and directed to execute any and all
documents concerning the above Preferred Ship Mortgage.

RESOLVED FURTHER, that the Officers are, and each of them
is, hereby authorized to execute such other documents,
consents, notices, agreements, certificates, in said Officer's
sole discretion, in order to effect the purposes of the
transactions contemplated thereby;

RESOLVED FURTHER, that any and all documents, instruments
and agreements executed by any of the Officers pursuant to the
authority delegated herein may contain such terms, conditions,
stipulations, or provisions as such Officer may approve and
deem necessary or appropriate, such approval to be
conclusively evidenced by his execution thereof;

We, the undersigned, hereby certify that the foregoing
constitutes a complete and accurate copy of the Resolution of
the Board of Directors of ARNOULT EQUIPMENT & CONSTRUCTION,
INC., properly adopted by the Corporation at a meeting of the
Board of Directors of the Corporation, duly convened and held
on the 4th day of December , 1994, and that the same
have not been rescinded, repealed or amended, and remain in
full force and effect.

Date: December 4, 1994

Date: December 4, 1994

Date: December 4, 1994

ENCLOSURE ( 19 )
PAGE 9 OF 9
FOR OFFICIAL USE ONLY
Public Availability to be
Determined Under 5 USC 552

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 00-0370 |
| v. | ) ) | SECTION "J" |
| UNITED STATES OF AMERICA through THE UNITED STATES COAST GUARD, | ) ) ) | |
| Defendant. | ) ) ) | MAGISTRATE "4" |

STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS AN ISSUE

Defendant does not controvert plaintiff's Statement of Uncontested Facts except in respect of the following (numbering corresponding to plaintiff's Statement of Uncontested Facts):

2. Defendant disagrees with this statement. The abstract of title for the M/V ENERGY VII did not reflect Arnoult Equipment and Construction as the owner; rather, it reflected Arnoult Equipment and Construction Company, Inc. as the owner. (See, Plaintiff's Memorandum, Tab 1 to Exhibit "A".) Defendant also contends that said abstract did not reflect that there were no existing mortgages, maritime liens or other encumbrances of record; rather, it reflected that a mortgage dated December 4, 1994, had been filed on June 7, 1995, granted by Arnoult

Equipment & Construction, Inc. in favor of WRT Energy Corporation, and that said mortgage had been "terminated" on November 2, 1995, but without any satisfaction of mortgage being filed. Therefore, GECC was reasonably on notice of the possibility of a prior WRT mortgage  Id.

6. Defendant agrees with this statement except that the GECC note and Fleet Mortgage were dated March 22, 1996. (See, Plaintiff's Memorandum, Tabs 1 and 2 to Exhibit "B".)

7. Defendant agrees with this statement except that the Fleet Mortgage was recorded on March 25, 1996. (See, Plaintiff's Memorandum, Tab 3 to Exhibit "C".)

14. Defendant agrees only with the statement that the Coast Guard Letter (Plaintiff's Memorandum, Tab 1 to Exhibit "C") included a revised abstract of title (Plaintiff's Memorandum, Tab 2 to Exhibit "C"). The conclusions to be drawn from that document are legal conclusions. As the Court subsequently held, the Coast Guard's treatment of the WRT Mortgage on the abstract of title was irrelevant to the issue of whether that mortgage actually primed the GECC mortgage.

22. Defendant agrees that the Court granted WRT's motion for partial summary judgment and denied GECC's motion for partial summary judgment in the Mayfield matter, holding that the WRT Mortgage No. 1 primed the GECC Mortgage. However, it is inaccurate to say that this was "because of the U.S. Coast Guard's retroactive reinstatement of the WRT Mortgage No. 1." Rather, the Court held that the Coast Guard's treatment of the WRT Mortgage on the abstract of title was irrelevant to the issues in that case.

24. Defendant is unable to state whether GECC relied upon the abstracts of title issued by the Coast Guard with respect to the ENERGY VII prior to making its loan to AEC, as such information is solely within the knowledge of plaintiff. Defendant notes that the question of whether such reliance was reasonable is before the Court in light of the facts stated in ¶ 2 above.

25. Defendant is unable to speculate whether GECC would or would not have loaned AEC any funds if the documentation it received from the Coast Guard had been other than it received, as such information is solely within the knowledge of plaintiff. However, defendant incorporates the facts stated in ¶ 2 above.

30. Defendant agrees that WRT filed a complaint in intervention on November 12, 1997, making the allegations stated. However, the promissory note referred to as executed by AEC, dated May 18, 1995, was in fact purportedly executed on behalf of a company called "AEC/Energy Marine, Inc.", as was the WRT Mortgage No. 2, also dated May 18, 1995. (See, Exhibit "A" hereto.)

34. Defendant disagrees with this statement. This is a legal conclusion. The Coast Guard's treatment of the WRT Mortgage on the abstract of title, in and of itself, is irrelevant to the issue of whether that Mortgage outranked the GECC Mortgage. However, the WRT Mortgage was found by the Court not to be valid (for the same reason that it was originally ineligible for filing and recording–the mortgagor and the owner were different entities), and therefore, it could not outrank the GECC Mortgage.

-3-

35. Defendant disagrees with this statement. The original abstract of title for the M/V JANE R. that was issued to GECC's representative did not reflect that AEC held legal title to the JANE R. It did reflect that no liens, mortgages or encumbrances, other than the J.R. Rosson mortgage, existed of record.

39. Defendant agrees with this statement, except that the docket indicates that the U. S. Marshal's sale of the JANE R. was on or about December 9, 1997 (Exhibit "B" hereto). Further, the Complaint in this matter, at ¶ XXXVI, admits that GECC also realized $25,000 in proceeds from "Bulldozer and other AEC Equipment Collateral." Defendant has no knowledge of the subsequent sale of JANE R. to a third party, said allegation is not supported by evidence in the record, nor is it relevant.

Dated: January 9, 2001.

Respectfully submitted,

DAVID W. OGDEN
Assistant Attorney General

EDDIE J. JORDAN, JR.
United States Attorney

STEVENS E. MOORE
Assistant U.S. Attorney

DAMON C. MILLER, Trial Attorney
U.S. Department of Justice
Torts Branch, Civil Division
P.O. Box 14271
Washington, D.C. 20044-4271
Telephone: (202) 616-4047

Attorneys for Defendant
United States of America

-4-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Defendant's Statement of Material Facts was sent by telefax and first class mail on this the 9th day of January, 2001 to the following counsel of record:

>       Henry A. King, Esq.
>       Michael L. Vincenzo, Esq.
>       King, LeBlanc & Bland, L.L.P.
>       201 St. Charles Avenue, Suite 3800
>       New Orleans, LA  70170

_____
DAMON C. MILLER