

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JAN 16 PM 4: 13

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 00-370 |
| VERSUS | * | |
| | * | SECTION "J " |
| THE UNITED STATES OF AMERICA THROUGH THE UNITED STATES COAST GUARD | * | MAGISTRATE "4" |
| | * | |
| | * | |

* * * * * * * * * * * * * * *

## MOTION AND MEMORANDUM FOR LEAVE TO FILE
## SUPPLEMENTAL AND REPLY MEMORANDUM

Plaintiff, General Electric Capital Corporation ("GECC"), through undersigned counsel, moves this Court for leave to file a supplemental memorandum in support of its motion for summary judgment and in reply to the opposition memorandum of defendant the United Stated of America through the United States Coast Guard (the "Coast Guard") pursuant to Uniform Local Rule 7.4. In support of this request, GECC respectfully states:

DATE OF ENTRY

JAN 3 0 2001

Fee
Process
X  Dktd
CtRmDep
Doc.No. 31

I.

The Coast Guard has filed a memorandum in opposition to GECC's motion for summary judgment.

II.

The Coast Guard's memorandum in opposition contains erroneous contentions and assertions of fact and raises issues not addressed in GECCs' original Motion which require a response on the part of GECC.

III.

Accordingly, GECC moves for permission to file its supplemental memorandum in support of motion for summary judgment, a copy of which is attached as Exhibit "1" hereto.

Respectfully submitted,

HENRY A. KING T.A. (#7393)
MICHAEL L. VINCENZO (#23965)
201 St.Charles Avenue, Suite 3800
New Orleans, LA 70170
Telephone: (504) 582-3800
Telefax: (504) 582-1233

Counsel to General Electric Capital
Corporation

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Motion and Memorandum for Leave to File Supplemental and Reply Memorandum has been forwarded to all counsel of record either by hand delivery or by depositing same in the U. S. Mail, properly addressed and postage prepaid, this 16 day of January, 2001.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 00-370 |
| VERSUS | * | |
| | * | SECTION "J " |
| THE UNITED STATES OF AMERICA THROUGH THE UNITED STATES COAST GUARD | * | MAGISTRATE "4" |
| | * | |
| * * * * * * * * * * * * * * | * | |

## ORDER

Considering the foregoing motion and memorandum for leave to file supplemental and reply memorandum in support of General Electric Capital Corporation's motion for summary judgment;

**IT IS HEREBY ORDERED** that General Electric Capital Corporation be granted leave to file a supplemental memorandum in support of its motion for summary judgment and in reply to the opposition memorandum of defendant, the United States of America through the United States Coast Guard.

New Orleans, Louisiana this _____ day of January, 2001.

UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION | * * * | CIVIL ACTION |
| | * | NO. 00-370 |
| VERSUS | * * | SECTION "J " |
| THE UNITED STATES OF AMERICA THROUGH THE UNITED STATES COAST GUARD | * * * | MAGISTRATE "4" |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*    \*

## REPY TO DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT**, plaintiff, General Electric Capital Corporation ("GECC"), submits this memorandum in reply to defendant's, the United States of America through the United States Coast Guard (the "Coast Guard"), response in opposition to GECC's Motion for Partial Summary Judgment. The facts of this case, and the applicable law, support GECC's Federal Tort Claims Act ("FTCA") claim based on certain negligent actions of Coast Guard employees committed in the course of their employment. GECC submits this brief memorandum to address and correct certain misstatements of fact and law included in the Coast Guard's opposition memorandum.



Fee _____
Process_____
X Dktd_____
CtRmDep_____
Doc.No._____

I.    **THE FACTS**

The Coast Guard, in its Memorandum in Opposition to Motion for Partial Summary Judgment ("Coast Guard Opposition"), has misstated the facts of the Claude Mayfield Action as they relate to this case. These misstatements pertain to the mortgage in favor of WRT Energy Corporation ("WRT") on the M/V ENERGY VII ("WRT Mortgage No. 1"). [1]  The first misstatement is the Coast Guard's assertion that the Court, in the Mayfield Action, "held that the Coast Guard's treatment of the WRT Mortgage on the abstract of title was irrelevant to the issues in that case." (See, Coast Guard's "Statement of Material Facts as to which there is an Issue" p. 2.)  The Court never held that the errors of the Coast Guard were "irrelevant."  In fact, the Court stated:  WRT asserts that the Coast Guard's filing error does not affect its priority and that the risk of the Coast Guard's error is, by law, to be borne by subsequent filers whose remedy is against the Coast Guard. (See, Minute Entry (Barbier, J.), p. 3 attached hereto as Exhibit "A.")

Secondly, in a last minute effort to justify its negligent actions, the Coast Guard relies on an insignificant discrepancy in the mortgage records—a discrepancy that was not noticed by the Coast Guard until nearly one year after the WRT Mortgage No. 1 was filed.  The Coast Guard alleges that the WRT Mortgage No. 1 was terminated because this mortgage was executed by "Arnoult Equipment & Construction, Inc." while the record owner of the ENERGY VII was "Arnoult Equipment and Construction Company, Inc." (See, Coast Guard Opposition p. 6.) The Coast Guard has never previously attempted to explain the reason for the

---

[1] GECC has previously explained the facts surrounding the Claude Mayfield Action and subsequent sale of the ENERGY VII in its Memorandum in Support of Motion for Partial Summary Judgment (the "GECC Memo."), filed before this court on December 19, 2000. (See, GECC Memo. p. 3-5.)

2

termination of the WRT Mortgage No. 1 on November 2, 1995.[2]  Even now, the

Coast Guard does not deny that its employees committed an error when the Coast

Guard accepted the WRT Mortgage No. 1 for filing.  In fact, the Coast Guard admits

that the "the procedural requirements for a termination were not complied with

under 46 C.F.R. §67.217 (termination after filing) or 46 C.F.R. §67.261 (removal

after recording)."  (See, Coast Guard Opposition p. 6 fn. 2.)  Therefore, based on the

words of the Coast Guard itself, it is clear that the Coast Guard personnel committed

a error with respect to the indexing of the WRT Mortgage No. 1.

   The termination of instruments filed in the Ship Mortgage records is governed

by 46 C.F.R. §67.217.  This section provides:

> The filing of an instrument is subject to termination if:  (1) It is
> determined that the instrument itself is not in *substantial compliance*
> with the applicable regulations in this part.

46 C.F.R. §67.217(a)(1).  The WRT Mortgage No. 1 was submitted in "substantial

compliance" with the regulations.  "Arnoult Equipment & Construction, Inc." and

"Arnoult Equipment and Construction Company, Inc." are not separate legal

entities.  The substitution of the word "and" for "&" and the insertion of

"Company" does not amount to a failure of "substantial compliance" under 46

C.F.R. §67.200 et. seq. The Coast Guard cannot avoid its liability with this eleventh

hour effort to justify its acts and omissions by citing hypertechincal distinctions in the

correct name of the mortgagor.

---

[2] Until now, the Coast Guard's only statement regarding the termination and retroactive re-instatement of this mortgage has been that the WRT Mortgage No. 1 "was indexed *incorrectly* as terminated." (See, GECC Memo p. 3 and GECC Opposition p. 2 .)

## II.    THE LAW.

The Coast Guard's Opposition also contains misinterpretations of the law. The Coast Guard continues to insist that GECC has stated a claim for "negligent misrepresentation" and fails to recognize that GECC's claim is based upon negligent actions of the Coast Guard employees. These negligent actions would provide GECC with a valid claim under "analogous" Louisiana law if the Coast Guard were a private employer.

### i.)    GECC has stated a claim for negligence, not misrepresentation.

GECC's claim against the Coast Guard is based upon the failure of Coast Guard employees to exercise due care in maintaining the Ship Mortgage records. (See, GECC Memo. pp. 12-13.) GECC has already explained, in detail, why the "negligent misrepresentation" exception to the FTCA is inapplicable to this case. Therefore, GECC refers the Court to the argument and law presented in its Memorandum In Opposition to Motion to Dismiss and/or Motion for Summary Judgment addressing the inapplicability of this exception to this matter. (See, GECC Opposition pp. 4-12.) However, GECC is compelled to refute one point raised by the Coast Guard on this issue.

The Coast Guard asserts that because GECC's Complaint states a claim for negligent misrepresentation, GECC is now seeking to re-characterize the nature of its claim. This is simply not the case. In GECC's Complaint, GECC stated "As a direct result of the Coast Guard's breach of its statutory duties *and/or its acts or omissions in the recordation procedures*...GECC has suffered substantial monetary

4

damages..." (GECC Complaint ¶XXVI p. 10, emphasis added.) Thus, GECC's claim has always been based on the negligent actions of the Coast Guard personnel.

Furthermore, as stated by the Fifth Circuit in *Atkins v. Metropolitan Life Ins. Co.*, "the manner in which a plaintiff chooses to plead her claim is not controlling; rather, a court must 'look to the essential act that spawned the damages' to determine whether the misrepresentation exception bars the claim." 225 F.3d 510, 512 (citing: *Saraw Partnership v. United States*, 67 F.3d 567, 570 (5th Cir. 1995).) Even if GECC did state a claim for misrepresentation, which it did not, GECC is not bound by allegations in the complaint that the Coast Guard might consider to state a claim for misrepresentation.

### ii.)   Louisiana law provides an "analogous source of liability for the actions of the Coast Guard employees.

GECC seeks a judgment against the Coast Guard based upon the doctrine of respondeat superior for the negligence of Coast Guard employees. Under Louisiana law, an employer is liable for the tortious acts of its employees that are "primarily employment rooted, reasonably incidental to the performance of the employees duties, occurred on the employer's premises, and occurred during hours of employment." *LeBrane v. Lewis*, 292 So.2d 216, 218 (La. 1974). The Coast Guard attempts to avoid liability for its negligent actions by relying on its assertion that there is no analogy under Louisiana law to establish the liability of the Coast Guard.

The position taken by the Coast Guard in its Opposition would preclude recovery against the Coast Guard absent a Louisiana statute that provides for the liability of private persons for negligently indexing Ship Mortgage records. The Coast Guard's position is not the law. Furthermore, the Coast Guard cites *Butts Feed*

Lots, Inc. v. United States, 690 F.2d 669 (8th Cir. 1982), and Smith v. United States 324 F.2d 622 (5th Cir. 1963), to support its claim that the Coast Guard would not be liable to GECC under analogous Louisiana law. These cases are easily distinguishable from the instant matter.

Smith has absolutely no application to this case. The claim asserted by the plaintiff in Smith was for breach of contract, not a tort claim. The FTCA, of course, does not apply to claims for breach of contract. Accordingly, that court held:

> [W]here the 'tort' complained of is based entirely upon breach by the government of a promise made by it in a contract, so the claim is in substance a breach of contract claim, and only incidentally and conceptually a tort claim, we do not think that the common law or local state law right to 'waive the breach and sue on tort' brings the claim within the Federal Tort Claims Act.

Id., at 625. (Citations omitted.) In addition, the court determined that the federal statute upon which the Smith plaintiff relied "did not create a duty to the laborers and materialmen, but created a duty only to the United States." Id., at 624. Thus, the private litigant in Smith could not state a claim for damages based on a violation of a statute that existed solely for the benefit of the government. The Ship Mortgage records, on the other hand, do not exist solely for the benefit of the government. Smith does not support the Coast Guard's position.

The Butts case is also distinguishable from GECC's claim. The plaintiff in Butts filed a loan application that was denied by the Small Business Association of North Dakota ("SBA"). This denial was reviewed and affirmed within the administration. The plaintiff then sued the SBA under the FTCA for negligent review of the loan application. This claim was dismissed because the plaintiff failed to demonstrate an analogous duty under North Dakota law. Id., at 670. Butts is not

applicable because GECC can demonstrate a duty under Louisiana law analogous to the duty owed by the Coast Guard employees.

The Coast Guard itself points out that "it is true that liability is not precluded merely because private individuals do no engage in the identical governmental activity giving rise to the claim." (Coast Guard Opposition p. 10, citing *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1995).) In other words, "there need not be an *actual* private party 'under like circumstances'..." *Bush v. Eagle-Picher Industries, Inc.*, 927 F.2d 445, 450 (9th Cir. 1991.) (Emphasis in original.) Therefore, a finding of liability against the United States under the FTCA requires, "[l]ike circumstances—not 'identical circumstances.' The national government is never situated identically to private parties. Our task is to find a fitting analogue under private law." *Carter v. United States*, 982 F.2d 1141, 1144 (7th Cir. 1992).

Two cases cited by GECC in the GECC Opposition demonstrate situations, similar to the instant case, in which the United States has been held liable for the negligence of its employees under the FTCA. The negligent conduct in *Saraw Partnership v. United States* 67 F.3d 567 (5th Cir. 1995) is closely analogous to the conduct of the Coast Guard employees. The *Saraw* court held that: [t]his case is not about reliance on faulty information or on the lack of proper information; rather, the gist of the case is the government's careless handling of Saraw's loan payments. *Id.* 67 F.3d at 571. The "gist" of GECC's case is about the negligence or "careless" handling of mortgages executed in favor of WRT on the ENERGY VII and JANE R.

Likewise, in *Atkins v. Metropolitan Life Ins. Co.*, 225 F.3d 510 (5th Cir. 2000), the court held the United States liable pursuant to the FTCA based on its determination that "the United States employee failed to preserve and properly file the correct copy- - that is, the signed copy-- of Tyler's form." *Id.* at 513. Clearly, a private insurance company would be held liable for such negligence of one of its employees under state law. The court in *Atkins* concluded that the United States could be held liable for such an act under the FTCA without even addressing state law. While there are no private "mortgage recording" companies, the conduct of the government employee in *Atkins* is similar to that of the Coast Guard employees. GECC's damages were caused by the negligence of the Coast Guard in accepting, *filing*, recording (and retroactively re-instating) mortgages and maintaining (or preserving) the Ship Mortgage records.

Finally, the Coast Guard asserts that La. R.S. §9:5214 providing for the liability of the register of mortgages and/or parish recorders of mortgages "cannot provide the necessary private-person analogy." (See, Coast Guard Opposition p. 10.) As stated by the United States Court of Appeal for the Ninth Circuit in *Hines v. United States*:

> "This argument misses the mark. Under the FTCA, the United States may be liable for the performance of some activities that private persons do not perform. Because private persons do not wield power to screen drivers of independent contractors who deliver bulk mail, the proper examination is whether state or municipal entities would be subject to such liability."

8

*Id.*, 60 F.3d 1442 (9th Cir. 1995.)[3]  Therefore, La. R.S. §9:5214 and La. R.S. §9:5520

et.seq. (the Louisiana Ship Mortgage Law) are not "inapposite" and provide another

analogue by which the Coast Guard, if it were a private employer, could be liable to

GECC under Louisiana law.

## CONCLUSION

The negligent actions of the Coast Guard serve as the basis of GECC's claim

and would be actionable under Louisiana law if the Coast Guard were a private

employer.  Therefore, GECC has stated a valid claim against the Coast Guard under

the FTCA.  The Coast Guard cannot avoid liability by creating the facts of this case

as they see fit, or by relying on inapplicable case law.  Accordingly, GECC

respectfully requests that this Court grant its motion for partial summary judgment

on the issue of liability.

Respectfully submitted,

**OF COUNSEL:**

**KING, LEBLANC & BLAND, L.L.P.**

HENRY A. KING, T.A. (#7393)
**MICHAEL L. VINCENZO (#23965)**
201 St. Charles Avenue, Suite 3800
New Orleans, Louisiana 70170
Telephone:  (504) 582-3800
Telefax:     (504) 582-1233

Attorneys for General Electric Capital
Corporation

S:\1129\018\PLDGS\REPLY.DOC

---

[3] The Ninth Circuit based its decision on the fact that, "[u]nder California law, a public entity can be held liable for an injury when it fails to discharge a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, and the entity's failure proximately causes that injury." *Hines*, 60 F.3d at 1448. Under Louisiana law, in accordance with La. R.S. §13:5101 et. seq., a public entity can be held liable for an injury proximately caused by its negligence.

9

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Opposition Memorandum to Defendant's Motion to Dismiss and/or for Summary Judgment pleading has been served upon all counsel of record either by facsimile, by hand delivery or by depositing same in the United States mail on this 16th day of January, 2001.

S:\1129\018\PLDGS\REPLY.DOC

10

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

1999 JAN 27 P 3 06

LORETTA G. WHYTE
CLERK

MINUTE ENTRY
BARBIER, J.
JANUARY 25, 1999

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CLAUDE MAYFIELD                           CIVIL ACTION

VERSUS

THE ENERGY VII, HER ENGINES,              NO: 96-1954
TACKLE, APPAREL, FURNITURE,
ETC., IN REM, AND
ARNOULT EQUIPMENT AND CONSTRUCTION
INC., IN PERSONAM                         SECTION: "J"(3)


        Before the Court is the **Motion for Partial Summary Judgment**

filed by plaintiff-in-intervention WRT Energy Corporation ("WRT")

and a **Motion for Summary Judgment** (essentially a cross-motion)

filed by plaintiff-in-intervention General Electric Capital

Corporation ("GECC"). Defendant, Arnoult Equipment and

Construction, Inc. ("Arnoult") opposes the motion of WRT. The

motions, which are set for hearing on January 20, 1999, are

before the Court on briefs without oral argument.

EXHIBIT
"A"

JAN 27 1999

DATE OF ENTRY

Fee
Process
X  Dktd
V  CtRmDep
Doc.No.

## BACKGROUND

The instant action arose when plaintiff Claude Mayfield sued the vessel Energy VII and Arnoult to recover damages for maritime personal injuries. After the sale of the Energy VII and satisfaction of Mayfield's claim, approximately $380,000 plus interest in proceeds from the vessel's sale remain in the registry of the Court. Both WRT and GECC, mortgagees of Arnoult, seek the remaining funds. Because the funds are not sufficient to satisfy both claims, the rank of their mortgages is contested, and is the subject of the parties' instant motions for summary judgment based upon the Ship Mortgage Act, 46 U.S.C. § 911 et seq., repealed and recodified as amended at 46 U.S.C. § 30101 et seq. (effective Jan. 1, 1989).

## DISCUSSION

WRT advances a "first in time, first in line" argument, contending that its mortgage outranks GECC's because it was filed before GECC's and it substantially complied with the Ship Mortgage Act. While WRT acknowledges that GECC's mortgage was filed during an interval during which the Coast Guard had mis-filed WRT's mortgage, so that the public records did not reflect

2

an existing mortgage on the Energy VII at the time GECC extended
credit to Arnoult, WRT asserts that the Coast Guard's filing
error does not affect its priority and that the risk of the Coast
Guard's error is, by law, to be borne by subsequent filers (in
this case, GECC) whose remedy is against the Coast Guard for
negligence.

GECC argues that its mortgage is superior because the WRT
mortgage is invalid and unenforceable, based on GECC's allegation
that there was no transfer of funds from WRT to Arnoult in
consideration for the mortgage.  Lacking any valid mortgage, GECC
argues, by definition WRT's mortgage is not preferred under the
Ship Mortgage Act and thus cannot outrank GECC's.  GECC
alternatively argues that even if WRT's mortgage were valid, its
reinstatement by the Coast Guard subsequent to the Coast Guard's
filing error may not prejudice GECC, as good faith filers who
could not by ordinary means have learned of WRT's prior mortgage.

In addition to the parties' arguments in support of their
own motions, both parties argue that the others' summary judgment
motion must be denied.  GECC claims that WRT has failed to meet
its legal burden to establish the validity of the underlying

3

debt. WRT claims that summary judgment in favor of GECC is precluded due to the existence of unresolved issues of material fact, namely, whether consideration was received by Arnoult in respect of the ship mortgage. Finally, Arnoult has submitted its own opposition to WRT's motion, stating that WRT has not successfully established the existence of a valid debt, and that in fact, no consideration was received from WRT for the ship mortgage. Arnoult's motion is supplemented by the affidavit of Guilford J. Acosta, corporate secretary to Arnoult, averring that no such consideration was received.[1]

While clearly WRT's mortgage must be valid to be enforced, the Court agrees with WRT that the narrow and purely legal issue of whether WRT's preferred mortgage, if valid, would prime GECC's preferred mortgage can be resolved without conclusively establishing the mixed factual and legal question of whether the WRT mortgage is valid.

---

[1] This allegation is contested by WRT, which contends that the mortgage was granted in consideration of pre-existing debt and that Acosta himself has in deposition testimony acknowledged this fact, at least to the extent of the $360,000 advanced by WRT to Arnoult for the original purchase of the vessel. WRT has also pointed to the self-serving nature of Acosta's testimony, given that he and Arnoult officer James L. Arnoult executed personal guarantees for the GECC mortgage but not for the WRT mortgage.

Moreover, while a preferred mortgage under the Ship Mortgage Act is superior to a non-preferred mortgage, contrary to GECC's argument, the validity of the mortgage is not a threshold issue in determining preferred status. To the contrary, the Ship Mortgage Act, as amended, does not place any onus upon courts interpreting it to reach the question of the validity of the mortgage in applying the Act. While the prior codification stated that "[a] valid mortgage at the time it is made . . . shall . . . have . . . preferred status"[2] 46 U.S.C. § 922(a)(repealed 1989), the statute in its current form reads as follows:

Preferred Mortgages

(a)   A preferred mortgage is a mortgage, whenever made, that--

(1)   includes the whole of the vessel;

(2)   is filed in substantial compliance with section 31321 of this title; and

(3)   (A)   covers a documented vessel; or

---

[2]   This is the language relied upon in the cases (all pre-1989) cited by GECC for the proposition that courts must first find a mortgage valid before determining whether it is entitled to preferred status. See, e.g., Chemical Bank New York Trust Co. v. Steamship Westhampton, 358 F.2d 574, 583 (4th Cir.), cert. denied, 385 U.S. 921, 87 S. Ct. 228 (1966).

5

> (B)  covers a vessel for which an application for
>       documentation is filed that is in substantial
>       compliance with the requirements of chapter
>       121 of this title and the regulations
>       prescribed under that chapter.

46 U.S.C. § 31322.

The exclusion of the qualifier "valid at the time it was made" in the later version of the statute suggests to the Court that, while a mortgage clearly must be valid to be enforced, proof of validity is not necessary to the initial determination of preferred status under the Ship Mortgage Act. This view is supported by the observations of commentators who have acknowledged that "[i]n the past our federal ship mortgage laws generally have not addressed the criteria for a vessel mortgage contract to be valid and enforceable as between the mortgagor and the mortgagee. New chapter 313 of title 46 continues this tradition and nowhere defines, for instance, the term 'mortgage.'" 2 Benedict on Admiralty, § 70 (1998). While the Court reemphasizes the obvious, that a mortgage must be valid to be enforced, it also recognizes the severability of the legal issue of whether an otherwise valid mortgage primes another from the mixed legal and factual question of whether the mortgage is

6

in fact valid.

Accordingly, the Court is called upon to resolve the legal issue of whether WRT's mortgage, if valid and enforceable, outranks GECC's.

Under the Ship Mortgage Act, if certain prerequisites are substantially complied with, the mortgage is deemed "perfected" and therefore valid against third persons having no actual notice of the encumbrance. 46 U.S.C. § 31321(a)(2). Under the Act, a mortgage is perfected from the time of filing (not recordation), if it substantially complies with the filing requirements of the Act. Id. To be filed, a mortgage must: "(1) identify the vessel; (2) state the name and address of each party to the instrument; (3) state, if a mortgage, the amount of the direct or contingent obligation . . . that is or may become secured by the mortgage, . . .; (4) state the interest of the grantor, mortgagor, or assignor in the vessel; (5) state the interest sold, conveyed, mortgaged, or assigned; and (6) be signed and acknowledged." 46 U.S.C. § 31321(a)(4)(B)(b). Because WRT substantially complied with the foregoing requirements, the Court finds that it holds a perfected, preferred mortgage. The Court

7

otherwise valid. Because WRT substantially complied with the filing requirements of the Ship Mortgage Act, its mortgage was valid against third parties, even those without notice of the mortgage, from the time it was filed. Even though a search of public records could not have disclosed the pre-existing encumbrance due to Coast Guard error, the Court finds that to hold otherwise -- and shift the risk of loss due to filing error to a good faith filer in substantial compliance with applicable requirements -- would frustrate the purposes of the Ship Mortgage Act. See, Maryland National Bank v. The Vessel Madam Chapel, 46 F.3d 895 (9th Cir. 1995). Further, the Court is at a loss to understand why, if acting in good faith, Arnoult (who must have had actual notice of the prior existing mortgage), declined to mention this fact to GECC when applying for credit from them. While the Court is not called upon to rule on what parties GECC may have an action against, and declines to do so, it does find that the loss should not be borne by WRT. Accordingly;

IT IS ORDERED that WRT's **Motion for Partial Summary Judgment** (Rec. Doc. 91) should be and is hereby **GRANTED**;

IT IS **FURTHER ORDERED** that GECC's **Motion for Summary**

9

**Judgment** (Rec. Doc. 94) should be and is hereby **DENIED**.

* * * * * *

10