FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JAN 17 AM 10:07
JAN 17 2001
LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, | |
| Plaintiff, | CIVIL ACTION NO. 00-0370 |
| v. | SECTION "J" |
| UNITED STATES OF AMERICA through THE UNITED STATES COAST GUARD, | MAGISTRATE "4" |
| Defendant. | |

## MOTION FOR LEAVE TO FILE REPLY BRIEF

Defendant, United States of America, herewith moves for leave to file its Reply to Plaintiff's Opposition Memorandum to Defendant's Motion to Dismiss and/or for Summary Judgment. Said Reply is attached hereto as Attachment "1". Said Reply is required to respond to plaintiff's new contention, made in its Opposition Memorandum, that its claim is not based upon misrepresentation..

Defendant moves pursuant to Local Rule 7.8.1E, which states, "A reply brief or memorandum, if any, shall not exceed 10 pages, excluding exhibits." The enclosed brief is within those specifications.

WHEREFORE, defendant seeks leave to file its Reply Brief.

Dated: January 16, 2001.

DATE OF ENTRY
JAN 3 0 2001

Fee____
Process____
X Dktd____
✓ CtRmDep____
Doc.No.____

Respectfully submitted,

DAVID W. OGDEN
Assistant Attorney General

EDDIE J. JORDAN, JR.
United States Attorney

STEVENS E. MOORE
Assistant U.S. Attorney

_____
DAMON C. MILLER
Trial Attorney
U.S. Department of Justice
Torts Branch, Civil Division
P.O. Box 14271
Washington, D.C. 20044-4271
Telephone: (202) 616-4047

Attorneys for Defendant
United States of America

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant's Motion for Leave to File Reply was telefaxed and mailed on this the 16 day of January, 2001 to the following counsel of record:

> Henry A. King, Esq.
> Michael L. Vincenzo, Esq.
> King, LeBlanc & Bland, L.L.P.
> 201 St. Charles Avenue, Suite 3800
> New Orleans, LA 70170

_____
DAMON C. MILLER

-2-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION NO. 00-0370 |
| v. | ) ) | SECTION "J" |
| UNITED STATES OF AMERICA through THE UNITED STATES COAST GUARD, | ) ) ) ) | MAGISTRATE "4" |
| Defendant. | ) ) ) | |

## ORDER

The Court, having considered the defendant's Motion to File Reply Brief, and finding same to be well taken, hereby ~~GRANTS~~ DENIES the Motion. The Clerk is directed file said Reply to Plaintiff's Opposition Memorandum of record ~~as MOOT~~.

Dated: January __, 2001.

_____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION NO. 00-0370 |
| v. | ) ) ) | SECTION "J" |
| UNITED STATES OF AMERICA through THE UNITED STATES COAST GUARD, | ) ) ) ) | MAGISTRATE "4" |
| Defendant. | ) ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION MEMORANDUM
TO DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

Defendant, United States of America, herewith replies briefly to Plaintiff's Opposition Memorandum, filed January 9, 2001.

Facts

ENERGY VII

Plaintiff claims that the defendant made certain misstatements of facts. Of course, in its Memorandum in Support, defendant was simply stating the facts as alleged by plaintiff or reasonably based upon the exhibits provided by plaintiff in support of its claim. Thus, Exhibit A to Defendant's Memorandum (the Abstract of ENERGY VII provided to plaintiff on March 1, 1996) shows that the WRT Mortgage No.1 had been terminated on November 2, 1995. Defendant did not state that it was terminated for non-compliance with the requirements of 46 C.F.R. 67.233(a)(1) (although that is, in fact, the case). (See, Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment, at 6, n. 2.) And the termination

___Fee_____
___Process_____
X  Dktd_____
✓ CtRmDep_____
Doc.No._____

was later cancelled because the procedural requirements for a termination were not followed. Id.

Plaintiff also asserts that defendant incorrectly stated that the validity of the WRT Mortgage No. 1 was never adjudicated. Plaintiff implies that that issue was adjudicated on summary judgment. Enclosed at Exhibit "A" is the Court's decision of January 27, 1999 in the Mayfield/ENERGY VII matter, reported at 1999 U.S. Dist. LEXIS 1049. The Court clearly decided only that the WRT mortgage, if valid, primed GECC's mortgage. It did not reach the question of whether the WRT mortgage was valid. (See, Exhibit "A" at *5.) That issue was settled between WRT and GECC. (See, Complaint, ¶¶ XVIII, XIX.)

### JANE R.

With respect to the JANE R., defendant was again simply stating the allegations and claims made by plaintiff in its Complaint, for the purpose of seeking to dismiss the Complaint under Rule 12(b)(1) and/or 12(b)(6). The plaintiff claimed, inter alia, that the JANE R. Abstract of Title which it received from the Coast Guard on or about March 1, 1996, showed "no existing mortgages, maritime liens or other encumbrances of record", when, in fact, WRT Mortgage No. 2 had been recorded on June 7, 1995. (Complaint, ¶¶ XXIV, XXXI.) Presumably, if that mortgage had been indexed on the Abstract of Title as of March 1, 1996, GECC would not have made its loan and would not have suffered damages. This looks to defendant like a clear claim of misrepresentation.

However, GECC now claims that its suit was not for misrepresentation at all, but for "negligent acts". However, it has failed to set forth any actionable duty under state or federal law that was violated by the Coast Guard. (See, Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment, at 7-10.)

## Law and Argument

Plaintiff's claim, fairly read, is one for misrepresentation. On page 4 of its Opposition Memorandum, it states clearly: "If the WRT Mortgage No. 1 and WRT Mortgage No. 2 had been indexed properly in accordance with the Ship Mortgage Act, the ENERGY VII and JANE R. Abstracts would have reflected these preexisting mortgages." GECC's claim is, basically, that it did not know about these preexisting mortgages (which would have reflected another party having a claim against the vessel) because they were not indexed on the abstracts of title that they received from the Coast Guard on or about March 1, 1996. As a result, GECC lent money on the collateral of the vessels. When the holder of these pre-existing mortgages appeared to enforce its rights, GECC allegedly suffered damages.

GECC says on page 4 of its Opposition that its losses occurred when the Coast Guard "retroactively re-indexed" the two mortgages. However, these "retroactive re-indexings" did not occur until, in one case, January 22, 1997 (ENERGY VII, see Exhibit "B" to Defendant's Memorandum in Support of Motion to Dismiss); and in the other case, November 12, 1997 (JANE R., see Exhibit "D" to Defendant's Memorandum). These "retroactive re-indexings" could not have caused plaintiff's damages because they occurred long after plaintiff had lent money in reliance on the original abstracts of title in March, 1996.

It is true that liability is not precluded by the "misrepresentation exception" if the plaintiff's damages are the result of the negligent performance of an operational task, entirely separate from the misrepresentation. However, that is not the case here. Plaintiff claims that the government should have told it about two mortgages which had been previously recorded by the

-3-

Coast Guard. Thus, it is, clearly and simply, a claim of misrepresentation.[1]

However, even if the misrepresentation exception does not apply, plaintiff has failed to show the breach of an actionable duty by the Coast Guard. Significantly, most of the cases cited by plaintiff do not even address this point, or they find a duty based upon state or federal law, not relevant to this case.

For example, in Vogelaar v. United States, 665 F.Supp. 1295 (E.D. Mich. 1987), the court found a duty under Michigan law for emotional distress based upon the negligent handling of human remains. In Metropolitan Life Ins. Co. v. Atkins, 225 F.3d 510 (5th Cir. 2000), the court found a separate waiver of sovereign immunity and duty under the Federal Employees Group Life Insurance Act, 5 U.S.C. § 8715 (In addition, the Atkins case did not involve a claim of misrepresentation at all, because, unlike the instant case, the court could not identify a specific communication or miscommunication which was the basis of the claim.)

In Mundy v. United States, 983 F.2d 950 (9th Cir. 1993), there was no discussion at all of the source of the "duty" which the United States may have had, the court simply remanding the case after concluding that the misrepresentation exception did not apply. In Alexander v. United States, 787 F.2d 1349 (9th Cir. 1986), the court, of course, did find that the misrepresentation exception applied; however, it also rejected plaintiff's alternative arguments that either 28 U.S.C. § 534 or 5 U.S.C. § 552 provided him with a cause of action, and found that they did not. And in JM Mechanical Corp. v. United States, etc., 716 F.2d 190 (3d. Cir. 1983), the court did not

---

[1] However, as stated in prior briefing, GECC was on notice of the WRT Mortgage No. 1, because it was indexed as having been filed on June 7, 1995 and terminated on November 2, 1995.

-4-

reach the duty issue, concluding that at least some of the claims made were not barred by the misrepresentation exception because, simply stated, they did not involve any communication. Id. at 195 n. 1.

In Saraw Partnership v. United States, 67 F.3d 567 (5th Cir. 1995), there was also no discussion of the source of any "duty". However, in analyzing the misrepresentation exception, the 5th Circuit stated the heart of the matter when it observed, at 571: "This case is not about reliance on faulty information or on the lack of proper information. . ." Further, the court noted, essential to an action for misrepresentation is communication of misinformation "on which the recipient relies." Id. at 571, quoting, Block v. Neal, 460 U.S. 289, 296 (1983). "Where there is no detrimental reliance on an alleged miscommunication, no claim for misrepresentation is made." Id. However, in the instant case, there is alleged to be specific reliance on abstracts of title which omitted information–i.e., the existence of previous mortgages. Hence, this case is clearly distinguishable.

## Conclusion

The complaint clearly alleges misrepresentations by the government to the plaintiff, and reliance on those misrepresentations. Hence, the claim falls under the misrepresentation exception. However, even if the misrepresentation exception does not apply, plaintiff has still not identified an actionable duty under either state or federal law. Hence, the complaint must be dismissed.

Dated: January 16, 2001.

Respectfully submitted,

DAVID W. OGDEN
Assistant Attorney General

EDDIE J. JORDAN, JR.
United States Attorney

STEVENS E. MOORE
Assistant U.S. Attorney

---
DAMON C. MILLER
Trial Attorney
U.S. Department of Justice
Torts Branch, Civil Division
P.O. Box 14271
Washington, D.C. 20044-4271
Telephone: (202) 616-4047

Attorneys for Defendant
United States of America


CERTIFICATE OF SERVICE


I hereby certify that a true and correct copy of Defendant's Reply to Plaintiff's Opposition was telefaxed and mailed on this the 1ᶜ day of January, 2001 to the following counsel of record:

Henry A. King, Esq.
Michael L. Vincenzo, Esq.
King, LeBlanc & Bland, L.L.P.
201 St. Charles Avenue, Suite 3800
New Orleans, LA  70170

---
DAMON C. MILLER

-6-

CLAUDE MAYFIELD VERSUS THE ENERGY VII, HER ENGINES, TACKLE,
APPAREL, FURNITURE, ETC., IN REM, AND ARNOULT EQUIPMENT AND
CONSTRUCTION INC., IN PERSONAM

CIVIL ACTION NO: 96-1954 SECTION: "J" (3)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

1999 U.S. Dist. LEXIS 1049

January 27, 1999, Filed; January 27, 1999, Entered

DISPOSITION: [*1] WRT's Motion for Partial Summary Judgment (Rec. Doc. 91) GRANTED; GECC's Motion for Summary Judgment (Rec. Doc. 94) DENIED.

COUNSEL: For CLAUDE - MAYFIELD, plaintiff: Cris Jackson, Shushan, Jackson & McPherson, L.L.C., New Orleans, LA.

For CLAUDE - MAYFIELD, plaintiff: John G. Discon, Thomas Massa Discon, Gregory T. Discon, Discon Law Firm, Mandeville, LA.

For GENERAL ELECTRIC CAPITAL CORPORATION, intervenor-plaintiff: Henry A. King, Michael L. Vincenzo, King, LeBlanc & Bland, LLP, New Orleans, LA.

For GOLDIN ASSOCIATES, L.L.C, intervenor-plaintiff: Samuel A. Giberga, Rice, Fowler, Kingsmill, Vance, Flint & Rodriguez, New Orleans, LA.

For WRT ENERGY CORPORATION, claimant: Randall L. Guidry, Randall L. Guidry, Attorney at Law, Lafayette, LA.

For GENERAL ELECTRIC CAPITAL CORPORATION, claimant: Henry A. King, Michael L. Vincenzo, King, LeBlanc & Bland, LLP, New Orleans, LA.

JUDGES: Carl J. Barbier.

OPINIONBY: Carl J. Barbier

OPINION: Before the Court is the Motion for Partial Summary Judgment filed by plaintiff-in-intervention WRT Energy Corporation ("WRT") and a Motion for Summary Judgment (essentially a cross-motion) filed by plaintiff-in-intervention General Electric [*2] Capital Corporation ("GECC"). Defendant, Arnoult Equipment and Construction, Inc. ("Arnoult") opposes the motion of WRT. The motions, which are set for hearing on January 20, 1999, are before the Court on briefs without oral argument.

BACKGROUND

The instant action arose when plaintiff Claude Mayfield sued the vessel Energy VII and Arnoult to recover damages for maritime personal injuries. After the sale of the Energy VII and satisfaction of Mayfield's claim, approximately $380,000 plus interest in proceeds from the vessel's sale remain in the registry of the Court. Both WRT and GECC, mortgagees of Arnoult, seek the remaining funds. Because the funds are not sufficient to satisfy both claims, the rank of their mortgages is contested, and is the subject of the parties' instant motions for summary judgment based upon the Ship Mortgage Act, *46 U.S.C. § 911* et seq., repealed and recodified as amended at *46 U.S.C. § 30101* et seq. (effective Jan. 1, 1989).



DISCUSSION

WRT advances a "first in time, first in line" argument, contending that its mortgage outranks GECC's because it was filed before GECC's and it substantially complied with the Ship Mortgage Act. [*3] While WRT acknowledges that GECC's mortgage was filed during an interval during which the Coast Guard had misfiled WRT's mortgage, so that the public records did not reflect an existing mortgage on the Energy VII at the time GECC extended credit to Arnoult, WRT asserts that the Coast Guard's filing error does not affect its priority and that the risk of the Coast Guard's error is, by law, to be borne by subsequent filers (in this case, GECC) whose remedy is against the Coast Guard for negligence.

GECC argues that its mortgage is superior because the WRT mortgage is invalid and unenforceable, based on GECC's allegation that there was no transfer of funds from WRT to Arnoult in consideration for the mortgage. Lacking any valid mortgage, GECC argues, by definition WRT's mortgage is not preferred under the Ship Mortgage Act and thus cannot outrank GECC's. GECC alternatively argues that even if WRT's mortgage were valid, its reinstatement by the Coast Guard subsequent to the Coast Guard's filing error may not prejudice GECC, as good faith filers who could not by ordinary means have learned of WRT's prior mortgage.

In addition to the parties' arguments in support of their own motions, [*4] both parties argue that the others' summary judgment motion must be denied. GECC claims that WRT has failed to meet its legal burden to establish the validity of the underlying debt. WRT claims that summary judgment in favor of GECC is precluded due to the existence of unresolved issues of material fact, namely, whether consideration was received by Arnoult in respect of the ship mortgage. Finally, Arnoult has submitted its own opposition to WRT's motion, stating that WRT has not successfully established the existence of a valid debt, and that in fact, no consideration was received from WRT for the ship mortgage. Arnoult's motion is supplemented by the affidavit of Guilford J. Acosta, corporate secretary to Arnoult, averring that no such consideration was received. n1

> n1 This allegation is contested by WRT, which contends that the mortgage was granted in consideration of pre-existing debt and that Acosta himself has in deposition testimony acknowledged this fact, at least to the extent of the $360,000 advanced by WRT to Arnoult for the original purchase of the vessel. WRT has also pointed to the self-serving nature of Acosta's testimony, given that he and Arnoult officer James L. Arnoult executed personal guarantees for the GECC mortgage but not for the WRT mortgage.

[*5]

While clearly WRT's mortgage must be valid to be enforced, the Court agrees with WRT that the narrow and purely legal issue of whether WRT's preferred mortgage, if valid, would prime GECC's preferred mortgage can be resolved without conclusively establishing the mixed factual and legal question of whether the WRT mortgage is valid.

Moreover, while a preferred mortgage under the Ship Mortgage Act is superior to a non-preferred mortgage, contrary to GECC's argument, the validity of the mortgage is not a threshold issue in determining preferred status. To the contrary, the Ship Mortgage Act, as amended, does not place any onus upon courts interpreting it to reach the question of the validity of the mortgage in applying the Act. While the prior codification stated that "[a] valid mortgage at the time it is made . . . shall . . . have . . . preferred status" n2 46 U.S.C. § 922(a) (repealed 1989), the statute in its current form reads as follows:

Preferred Mortgages

(a) A preferred mortgage is a mortgage, whenever made, that--

(1) includes the whole of the vessel;

(2) is filed in substantial compliance with section 31321 of this title; and

(3) (A) covers [*6] a documented vessel; or

(B) covers a vessel for which an application for documentation is filed that is in substantial compliance with the requirements of chapter 121 of this title and the regulations prescribed under that chapter.

*46 U.S.C. § 31322*

> n2 This is the language relied upon in the cases (all pre-1989) cited by GECC for the proposition that courts must first find a mortgage valid before determining whether it is entitled to preferred status. See. e.g., *Chemical Bank New York Trust Co. v. Steamship Westhampton, 358 F.2d 574, 583* (4th Cir.), cert. denied, *385 U.S. 921, 87 S. Ct. 228, 17 L. Ed. 2d 145 (1966)*.

The exclusion of the qualifier "valid at the time it was made" in the later version of the statute suggests to the Court that, while a mortgage clearly must be valid to be enforced, proof of validity is not necessary to the initial determination of preferred status under the Ship Mortgage Act. This view is supported by the observations of commentators who have acknowledged [*7] that "in the past our federal ship mortgage laws generally have not addressed the criteria for a vessel mortgage contract to be valid and enforceable as between the mortgagor and the mortgagee. New chapter 313 of title 46 continues this tradition and nowhere defines, for instance, the term 'mortgage.'" 2 Benedict on Admiralty, § 70 (1998). While the Court reemphasizes the obvious, that a mortgage must be valid to be enforced. it also recognizes the severability of the legal issue of whether an otherwise valid mortgage primes another from the mixed legal and factual question of whether the mortgage is in fact valid.

Accordingly, the Court is called upon to resolve the legal issue of whether WRT's mortgage, if valid and enforceable, outranks GECC's.

Under the Ship Mortgage Act, if certain prerequisites are substantially complied with, the mortgage is deemed "perfected" and therefore valid against third persons having no actual notice of the encumbrance. *46 U.S.C. § 31321*(a)(2). Under the Act, a mortgage is perfected from the time of filing (not recordation), if it substantially complies with the filing requirements of the Act. Id. To be filed, a mortgage must: "(1) identify [*8] the vessel; (2) state the name and address of each party to the instrument; (3) state, if a mortgage, the amount of the direct or contingent obligation . . . that is or may become secured by the mortgage, . . .; (4) state the interest of the grantor, mortgagor, or assignor in the vessel; (5) state the interest sold, conveyed, mortgaged, or assigned; and (6) be signed and acknowledged." *46 U.S.C. § 31321*(a)(4)(B)(b). Because WRT substantially complied with the foregoing requirements, the Court finds that it holds a perfected, preferred mortgage. The Court assumes for the sake of argument that GECC's mortgage is perfected and preferred.

WRT's mortgage was perfected on June 7, 1995; GECC's on March 25, 1996. The parties do not contest that indebtedness secured by a first preferred ship mortgage has priority over a subsequently filed first preferred ship mortgage. *46 U.S.C § 31326*(b)(1). Thus, absent unusual circumstances, because WRT was first in time to be perfected, it should be first in line to get paid.

Where the parties disagree, however, is that GECC asserts that unusual circumstances exist because due to the Coast Guard's filing error (which caused the public records to reflect [*9] erroneously that WRT's mortgage was terminated as of November 2, 1995), GECC lacked notice of WRT's prior mortgage, and GECC should not therefore bear the loss resulting from the error. Instead, GECC argues that the reinstatement of WRT's mortgage in early 1997 cannot be retroactive to the date of the error, and thus its mortgage, filed in the interval, primes WRT's.

The Court finds that notwithstanding this chain of events, as a matter of law WRT's mortgage primes GECC's provided it is otherwise valid. Because WRT substantially complied with the filing requirements of the Ship Mortgage Act, its mortgage was valid against third parties, even those without notice of the mortgage, from the time it was filed. Even though a search of public records could not have disclosed the pre-existing encumbrance due to Coast Guard error, the Court finds that to hold otherwise -- and shift the risk of loss due to filing error to a good faith filer in substantial compliance with applicable requirements -- would frustrate the purposes of the Ship Mortgage Act. See, *Maryland National Bank v. The Vessel Madam Chapel, 46 F.3d 895 (9th Cir. 1995)*. Further, the Court is at a loss to understand why, [*10] if acting in good faith, Arnoult (who must have had actual notice of the prior existing mortgage), declined to mention this fact to GECC when applying for credit from them. While the Court is not called upon to rule on what parties GECC may have an action against, and declines to do so, it does find that the loss should not be borne by WRT. Accordingly;

IT IS ORDERED that WRT's Motion for Partial Summary Judgment (Rec. Doc. 91) should be and is hereby GRANTED;

IT IS FURTHER ORDERED that GECC's Motion for Summary Judgment (Rec. Doc. 94) should be and is hereby DENIED.

Carl J. Barbier