



U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED | JAN 1 8 2001

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GENERAL ELECTRIC CAPITAL | * | CIVIL ACTION |
| CORPORATION | * | |
| | * | NO. 00-370 |
| VERSUS | * | |
| | * | SECTION "J " |
| THE UNITED STATES OF AMERICA | * | |
| THROUGH THE UNITED STATES | * | MAGISTRATE "4" |
| COAST GUARD | * | |
| | * | |

* * * * * * * * * * * * * * *

### MOTION AND MEMORANDUM FOR LEAVE TO FILE SUPPLEMENTAL AND REPLY MEMORANDUM

Plaintiff, General Electric Capital Corporation ("GECC"), through undersigned counsel, moves this Court for leave to file a supplemental memorandum in support of its motion to compel and in reply to the opposition memorandum of defendant the United Stated of America through the United States Coast Guard (the "Coast Guard"). In support of this request, GECC respectfully states:

DATE OF ENTRY

JAN 3 0 2001

Fee.____
____Process____
X Dktd ____
__ CtRmDep
Doc.No. 33

I.

The Coast Guard has filed a memorandum in opposition to GECC's motion to compel.

II.

The Coast Guard's memorandum raises issues not addressed in GECCs' original motion which require a response on the part of GECC.

III.

GECC has been granted leave to file the instant memo by oral order of Judge Roby.

IV.

Accordingly, GECC moves for permission to file its supplemental memorandum in support of motion to compel, a copy of which is attached as Exhibit "1" hereto.

Respectfully submitted,

HENRY A. KING T.A. (#7393)
MICHAEL L. VINCENZO (#23965)
201 St.Charles Avenue, Suite 3800
New Orleans, LA 70170
Telephone: (504) 582-3800
Telefax: (504) 582-1233

Counsel to General Electric Capital Corporation

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 00-370 |
| VERSUS | * | |
| | * | SECTION "J " |
| THE UNITED STATES OF AMERICA THROUGH THE UNITED STATES COAST GUARD | * | MAGISTRATE "4" |
| | * | |
| | * | |

* * * * * * * * * * * * * * * *

## ORDER

Considering the foregoing motion and memorandum for leave to file supplemental and reply memorandum in support of General Electric Capital Corporation's motion to compel;

**IT IS HEREBY ORDERED** that General Electric Capital Corporation be granted leave to file a supplemental memorandum in support of its motion to compel and in reply to the opposition memorandum of defendant, the United States of America through the United States Coast Guard.

New Orleans, Louisiana this ___ day of January, 2001.

_____
UNITED STATES DISTRICT JUDGE

**CERTIFICATE**

I hereby certify that a copy of the above and foregoing Motion and
Memorandum for Leave to File Supplemental and Reply Memorandum has been
forwarded to all counsel of record either by hand delivery or by depositing same in
the U. S. Mail, properly addressed and postage prepaid, this _18th_ day of January,
2001.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GENERAL ELECTRIC CAPITAL | * | CIVIL ACTION |
| CORPORATION | * | |
| | * | NO. 00-370 |
| VERSUS | * | |
| | * | SECTION "J " |
| THE UNITED STATES OF AMERICA | * | |
| THROUGH THE UNITED STATES | * | MAGISTRATE "4" |
| COAST GUARD | * | |
| | * | |
| * * * * * * * * * * * * * * | * | |

## SUPPLEMENTAL AND REPLY MEMORANDUM
## IN SUPPORT OF MOTION TO COMPEL DISCOVERY

General Electric Capital Corporation ("GECC") submits the following Supplemental and Reply Memorandum in Support of its Motion to Compel Production of Documents and in response to the United States Coast Guard's ("Coast Guard") Opposition Memorandum.

In its Opposition Memorandum, the Coast Guard states that it no longer asserts the law enforcement privilege with respect to the "Coast Guard Investigative Service Report of Investigation" (the "Investigative Report"), which is the subject of GECC's Motion to Compel. Instead, the Coast Guard has now invoked the "work product privilege."

The Court has ordered an *in camera* inspection of the Investigative Report to determine whether or not the witness statements contained therein are protected by privilege. GECC notes that any statements taken for a purpose other than the "claims investigation" allegedly undertaken by the Coast Guard would not fall within the work product privilege asserted. In prior discussions with the Coast Guard, GECC was informed of the possibility that an internal investigation of Coast Guard employees was performed in

Page 1 of 6

connection with the incidents which are subject of the instant litigation. The Coast Guard claims and litigation manual produced by the Coast Guard as an attachment to its Opposition Memorandum indicates that "a claims investigation" may be "combined with an investigation required by another directive". (See Coast Guard Claims and Litigation Manual, Section D (4)). GECC submits that statements and information obtained in connection with any law enforcement investigation of Coast Guard employees would not be protected by either the work product doctrine or Freedom of Information Act.

## PRODUCTION OF WORK-PRODUCT DOCUMENTATION

According to the records produced by the Coast Guard, an investigation by the Coast Guard Investigative Service ("CGIS") was initiated on January 13, 1998. The Coast Guard has stated that on March 11, 1998, the CGIS issued a "final report" which consisted of a "report of investigation" form as well as fourteen (14) pages of attachments including witness interviews, lists of enclosures and identifying data on witnesses. Significantly, neither the preliminary "report of investigation" or the "final report" contains a statement to the effect that the investigations were being "conducted in contemplation of litigation." This statement only appears on the top of an otherwise blank page which follows the "final report." It should also be noted that the single page of the "final report" indicates that it is page one (1) of one (1) pages. In any event, it is not at all clear from the documents produced by the Coast Guard that the language required to designate these documents as work-product has been included in these reports. See Hill Tower, Inc. v. Dept. of the Navy, 718 F. Supp., 562 (n. d. tex. 1988).

Although the privilege log does not include a detailed breakdown of the contents of the Investigative Report, it appears from the documents produced that several witness interviews were taken in conjunction with the CGIS investigation. GECC submits that these interviews must be produced under the "good cause" standard set forth in *Southern Railway Company v. Lanham*, 403 F. 2d, 119 (5th Cir. 1969). *Southern Railway* discusses the circumstances under which witness statements which are otherwise qualified as "work product of an attorney" are subject to production under Federal Rule of Civil Procedure 34. The Court discussed the standard of "good cause" required to be shown in order to require the production of such statements. The Fifth Circuit cited the following language from a District Court decision on the issue:

> In view of the liberal spirit of the rules, the Court should be disposed to grant such discovery as will accomplish full disclosure of the facts, eliminate surprise, and promote settlement. What must be shown under the requirement of good cause in Rule 34 are such circumstances as give the Court reason to expect that the beneficial objectives of pre-trial discovery will be achieved.

*Id* at 127 (citing *Crowe v. Chesapeake & Ohio RY. Co.*, E.D. Mich. 1961, 29 Frd. 148, 150-151).

In *Southern Railway*, the Court dealt with the production of witness statements taken of a train crew shortly after a railway accident. In evaluating the importance of these statements in the litigation, the Court noted as follows:

> "There can be no doubt that information concerning the circumstances of the accident from those closely involved is important, even essential to the proper preparation of Appellees' case. The issue, however, is whether Appellees need the *written statements* in the preparation of their case, or conversely, whether the desired information can be secured from the witnesses themselves through interviews and depositions. *Id* citing Ford Mores Federal Practice ¶ 3408, at 2482-83.

The party withholding the statements argued that, insofar as the crewmembers were available for deposition, good cause did not exist. *Id.* However, the Fifth Circuit found that the real question was "whether the movant can obtain the ... facts without production of the documents containing the original statements. The Court noted that it was appropriate to evaluate whether it was possible to personally obtain statements from witnesses by deposition which would be substantially equivalent to prior written statements. The Court found that in the matter before it, the passage of time made it unlikely that a present deposition would be as accurate as the previous written statements. The Court noted that many courts had found the mere passage of time to be sufficient justification to require the production of the statements. *Id* at 128.

The Court also noted that the written statements were made by employees of the defendant who may be expected to be somewhat reluctant to answer fully questions propounded by one pursuing a cause of action against the employer. *Id.* "The employment relationship would appear to create a situation of inequality between the parties with respect to gathering accurate statements from the crew." *Id* citing *Redfern v. American President Lines, Ltd.*, 228 F. Supp., 227, 231 (N.D. Cal. 1963). The Court noted that it was generally recognized that the "requirement of good cause is more easily satisfied when witnesses are employees than in the usual case". *Id* at 129 citing *Gilford Nat'l Bank vs. Southern RY. Co.*, 297 F. 2d 921, 926 (5th Cir. 1962). Based on the passage of time and the status of the witnesses as employees, the Court found that good cause had been shown in the matter before it.

The holding in *Southern Railway* has been recently approved and followed by both Judge Fallon and Judge Livaudais of the Federal District Court for the Eastern District of

Louisiana. *See Trico Marine Assets, Inc. v. Alpha Marine Services, LLC*, 1999 WL 694103 (E.D. La.) (J. Livaudais); *Holton v. S&W Marine, Inc.*, 2000 WL 1693667 (ed. La.) (J. Fallon). (see Cases attached).

In the instant matter, the facts strongly support the production of the witness statements taken by the Coast Guard. The facts giving rise to the cause of action in the instant matter occurred between 1994 and 1997. On August 22, 1997, GECC sought to obtain deposition testimony from Coast Guard documentation officers with knowledge of the incidents giving rise to the instant litigation. This testimony was sought in conjunction with ongoing litigation between WRT Energy Company and GECC. (See letter dated August 22nd, 1997 from GECC to Coast Guard attached hereto as Exhibit "A".) The request complied with 49 C.F.R. §9.15 which requires such discovery requests to be directed to the Commandant of the United States Coast Guard. ("A"). A response to the initial request for depositions was never received and on October 28, 1997, after communicating by telephone with an attorney for the Coast Guard, GECC sent a second request for deposition, along with a copy of the original request. (See letter dated October 28, 1997 attached hereto as Exhibit "B"). In this correspondence GECC indicated that it believed William Gougis was the person most likely to have information on the matters being sought. (Exhibit "B"). On January 26, 1998, GECC received a letter from the Coast Guard which denied a request for deposition. (See letter from Coast Guard dated January 26, 1998 attached as Exhibit "C").

Since the date the Coast Guard denied GECC's deposition request, Mr. Gougis has died. Accordingly, it is now impossible for GECC to obtain any testimony from this witness. Accordingly, GECC is undeniably entitled to any statements taken by the Coast

Guard of this individual. In regard to the other witnesses believed to have been interviewed, it is apparent that all these individuals are employees of the Coast Guard. Furthermore, the Investigative Report and subject statements were taken by the Coast Guard much closer in time to the proximity of the events giving rise to the instant litigation and there is no way GECC can replicate this information at this late date. Despite its efforts to do so, GECC was prohibited from deposing these witnesses. Any statements taken by the Coast Guard of these witnesses are bound to be far more reliable than any deposition which GECC could undertake at the present date.

Accordingly, based on the rationale of *Southern Railway* and its progeny, these statements are subject to production.

Respectfully submitted,

KING, LeBLANC & BLAND, L.L.P.

HENRY A. KING, T.A. (#7393)
MICHAEL L. VINCENZO (#23965)
201 St. Charles Avenue, Suite 3800
New Orleans, LA 70170
Telephone: (504) 582-3800
Telefax: (504) 582-1233

**Counsel to Plaintiff,**
General Electric Capital Corporation

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Motion and Memorandum for Leave to File Supplemental and Reply Memorandum has been forwarded to all counsel of record either by hand delivery or by depositing same in the U. S. Mail, properly addressed and postage prepaid, this ___ day of January, 2001.

S:\1129\018\PLDGS\SUPP & REPLY MEMO IN SUPPORT OF MTN TO COMPEL DISC.DOC

# NESSER, KING & LEBLANC, L.L.P.

3800 FIRST NBC CENTER
201 ST. CHARLES AVENUE
NEW ORLEANS, LOUISIANA 70170
TELEPHONE: (504) 582-3800
TELEFAX: (504) 582-1233

JOHN T. NESSER III+
HENRY A. KING+
JOSEPH E. LEBLANC, JR
DAVID S. BLAND+
PATRICIA A. KREBS+
ROBERT J. BURVANT
GEORGE B. JURGENS III
J. GRANT COLEMAN, LLM*

+ ALSO ADMITTED IN TEXAS
* BOARD CERTIFIED SPECIALIST
IN TAXATION ALSO ADMITTED
IN WASHINGTON D C

ERIC E. JARRELL
LIANE K. HINRICHS++
LEN R. BRIGNAC**
J TIMOTHY WOODARD+
OF COUNSEL
CLARE P HUNTER
JEFFREY M BURMASTER
CYNTHIA A. LANGSTON

++ ALSO ADMITTED IN MARYLAND
AND WASHINGTON, D C
** REGISTERED PATENT ATTORNEY
ALSO ADMITTED IN FLORIDA

**Affiliated Office:**
NESSER, KING, LEBLANC &
DARDENNE, L.L.P.
356 St. Charles Street
P. O. Box 2976
Baton Rouge, Louisiana 70821
Telephone: (504) 343-8368
Telefax: (504) 383-3733

MARGARET M. SLEDGE++
ELTON A FOSTER+
SCOTT T ZANDER
ELIZABETH S. WHEELER
JAMES D BERCAW
TIMOTHY S. MADDEN
ELIZABETH A. MEEK

*** ALSO ADMITTED IN FLORIDA

R. SCOTT JENKINS
F. BRIAN CHASE***
KRISTOPHER T. WILSON
MICHAEL L. VINCENZO
JOANNE MANTIS
ANDRE C. BROUSSARD
JENNIFER LANGSTON

August 22, 1997

**VIA FEDERAL EXPRESS**

Commandant (G-LCL/34)
U.S. Coast Guard
2100 2nd Street, S.W.
Washington, D.C. 20593

ATTN:  Captain Lane McClelland

Re:    ENERGY VII

Dear Capt. McClelland:

Pursuant to 49 C.F.R. § 9.15, we hereby request the deposition testimony of the Documentation Officer of the United States Coast Guard most competent to testify about the matters set forth herein.  This testimony is to be taken in connection with a matter currently pending in the United States District Court for the Eastern District of Louisiana, bearing the caption Claude Mayfield v. The ENERGY VII, her engines, tackle, apparel, furniture, etc., in rem and Arnoult Equipment and Construction, Inc., in personam, C.A. No. 96-1954, Sec. "T", Mag. 3.  Because of impending deadlines in this litigation, the undersigned would like to conduct this deposition prior to September 26, 1997.

The undersigned represents General Electric Capital Corporation ("GECC"), which is the holder of a preferred ship mortgage on the vessel ENERGY VII, a jack-up barge bearing Official No. 556463 (the "Vessel").  The suit in question originally stems from the claims of Claude Mayfield, who filed suit against the Vessel, claiming that he was injured as a result of the unseaworthiness thereof.  Mr. Mayfield then had the Vessel arrested by the United States Marshal.  Soon thereafter, GECC filed a notice of claim stating that GECC is entitled to any funds



EXHIBIT
"A"

Commandant (G-LCL/34)
U.S. Coast Guard
ATTN: Captain Lane McClelland
August 22, 1997
Page -2-

recovered at the sale of the Vessel, based on GECC's status as the holder of a first preferred ship mortgage. WRT Energy Corporation ("WRT") also filed a notice of claim, asserting that it was, in fact, the holder of a preferred ship mortgage superior in rank to the mortgage held by GECC.

Prior to the execution of the mortgage held by GECC, GECC obtained an abstract of title from the U.S. Coast Guard reflecting that there were no existing mortgages or liens encumbering the ENERGY VII. A certificate of ownership obtained after the recordation of the GECC preferred ship mortgage similarly reflected to status as the first preferred ship mortgagee. Sometime after the inception of the lawsuit instigated by Mr. Mayfield, GECC and WRT were both informed that the U.S. Coast Guard now takes the position that the abstract of title issued to GECC for the ENERGY VII was erroneous, and that WRT's mortgage should have been noted as an existing preferred ship mortgage, predating the mortgage in favor of GECC. A copy of the letter stating that the Coast Guard had incorrectly noted that WRT's mortgage had been terminated is attached hereto as Exhibit "A."

In the subject litigation, WRT and GECC both claim that their respective ship mortgage is entitled to status as a "first preferred ship mortgage" under 46 U.S.C. § 31322. Accordingly, the due and proper recordation of the WRT ship mortgage and the circumstances surrounding its termination and reinstatement are all relevant and germane to this ranking dispute. In light of this, GECC seeks the testimony of the Coast Guard employee with the most knowledge concerning the recordation, termination and reinstatement of the ship mortgage held by WRT.

On May 15, 1997, the undersigned counsel submitted a request under the Freedom of Information Act seeking any and all documents relating to the various mortgages encumbering the Vessel. A copy of GECC's request is attached hereto as Exhibit "B." The Coast Guard responded to this inquiry on June 26, 1997, however, the documentation provided did not contain any information concerning the recordation and termination of the mortgage claimed by WRT. A copy of the response is attached hereto as Exhibit "C." A second request by GECC under the Freedom of Information Act was made on August 14, 1997 and is currently outstanding. A copy of that request is attached hereto as Exhibit "D."

Commandant (G-LCL/34)
U.S. Coast Guard
ATTN:  Captain Lane McClelland
August 22, 1997
Page -3-


As required by 49 C.F.R. § 9.15, the undersigned has attached a certification stating that the information sought is not reasonably available from other sources and that no expert or opinion testimony will be sought from the witness to be deposed.

Very truly yours,

F. Brian Chase

FBC/db
Attachments
1129-003/ltrs/guard.doc

FILE COPY

## NESSER, KING & LEBLANC, L.L.P.

3800 FIRST NBC CENTER
201 ST. CHARLES AVENUE
NEW ORLEANS, LOUISIANA 70170
TELEPHONE: (504) 582-3800
FAX: (504) 582-1233

JOHN T. NESSER III+
HENRY A. KING+
JOSEPH E. LEBLANC, JR
DAVID S. BLAND+
PATRICIA A. KREBS+
ROBERT J. BURVANT
GEORGE B. JURGENS III
J GRANT COLEMAN, LLM*

ERIC E. JARRELL
LIANE K. HINRICHS++
LEN R. BRIGNAC**
J TIMOTHY WOODARD+
OF COUNSEL
CLAIRE P. HUNTER
JEFFREY M. BURMASTER
CYNTHIA A. LANGSTON

+ ALSO ADMITTED IN TEXAS
++ ALSO ADMITTED IN MARYLAND
   AND WASHINGTON, D C
+++ ALSO ADMITTED IN FLORIDA

* BOARD CERTIFIED SPECIALIST IN
  TAXATION  ALSO ADMITTED IN
  WASHINGTON, D C

Affiliate:
Nesser, King, LeBlanc & Dardenne, L.L.P.
356 St. Charles Street
PO Box 2976
Baton Rouge, Louisiana 70821
Telephone: (504) 343-8368
Fax: (504) 383-3733

MARGARET M SLEDGE++
ELTON A FOSTER+
SCOTT T ZANDER
ELIZABETH S WHEELER
JAMES D BERCAW
TIMOTHY S. MADDEN
ELIZABETH A. MEEK
F BRIAN CHASE+++

** REGISTERED PATENT
   ATTORNEY ALSO ADMITTED IN
   FLORIDA

BRYAN DE TRAY+++
MICHAEL L. VINCENZO
JOANNE MANTIS***
ANDRE C. BROUSSARD
JENNIFER H. LANGSTON
JAMES W. NOE
NORMAN E. ANSEMAN III

*** ADMITTED IN LOUISIANA,
    RESIDENT ATTORNEY IN
    GREECE

Direct Dial: (504) 569-1752

October 28, 1997

## VIA FACSIMILE (202) 267-4429

Lieutenant Tom Emerick
U.S. Coast Guard
2100 2nd Street, S.W.
Washington, D.C.  20593

Re:    **M/V ENERGY VII**

Dear Lt. Emerick:

As you requested, I have enclosed a copy of our original request to depose a member of the United States Coast Guard.  Our investigation indicates that the documentation officer with the best knowledge of the facts surrounding this matter is William Gougis, currently stationed in New Orleans, Louisiana.

If you have any questions concerning this matter, please do not hesitate to call.

Very truly yours,

F. Brian Chase

FBC/db
Enclosure
1129\003\letters\emerick.O28

**EXHIBIT**
"B"

U.S. Department
of Transportation

**United States
Coast Guard**

Headquarters
United States Coast Guard

2100 Second Street, S.W.
Washington, DC 20593-0001
Staff Symbol: G-LCL
Phone: 202-267-0055
FAX: 202-267-4429

5890
January 26, 1998

Mr. Michael L. Vincenzo, Esquire
Nesser, King & LeBlanc, L.L.P.
388 First NBC, Center
210 St. Charles Avenue
New Orleans, Louisiana 70170

RE: <u>ENERGY VII</u>

Dear Mr. Vincenzo:

In response to your August 22, 1997, request for "...the testimony of the Coast Guard employee
with the most knowledge concerning the recordation, termination and reinstatement of the ship
mortgage held by WRT," we deny your request. The least burdensome method of obtaining this
information is by written interrogatories. (Please see 49 C.F.R. § 9.15 (a)). If you desire to send
written interrogatories on the above subject matter, we will have the appropriate person(s)
answer your questions. The answers will be returned as promptly and completely as possible, so
you may meet time deadlines.

If you have any questions please continue to contact, staff attorney Lieutenant Junior Grade
Thomas Emerick. His direct number is 202-267-0055, and he can be reached between the hours
of 7:30 A.M. and 5:00 P.M.

Sincerely,

L.I. McCLELLAND
Captain, United States Coast Guard
Chief, Office of Claims and Litigation
By direction of the Commandant

**EXHIBIT**

"C"

2000 WL 1693667
(Cite as: 2000 WL 1693667 (E.D.La.))
C

Page 4

Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.

James C. HOLTON
v.
S & W MARINE, INC., et al.

No. CIV.A.00-1427.

Nov. 9, 2000.

ORDER AND REASONS

FALLON, District J.

*1 Defendants move this Court to review the Magistrate Judge's Order requiring defendant to produce a witness's statement to the plaintiff. On September 13, 2000, the Court heard oral argument on the motion and ordered that the statement be produced for in-camera review. After in-camera inspection of the statement and review of the applicable law and record, the Court orders the defendants to produce the statement to the plaintiff for the following reasons.

I. BACKGROUND

On December 7, 1999, plaintiff James C. Holton alleges that he was injured while working aboard the M/V Jenny W. Holton alleges that his relief captain, Dean Ockman, told him to jump six to ten feet from the barge to the dock in order to secure a mooring line. Holton claims that he suffered severe injuries to his lower back as a result of that jump.

On December 13, 1999, Holton completed an accident report and was removed from the M/V Jenny W. and flown to New Orleans for treatment. Defendants notified their underwriters of a potential claim by the plaintiff. The underwriters retained a third-party adjuster, E.J. Halverson & Assoc., Inc. ("Halverson"), to investigate the incident. Halverson took Holton's statement in late December, 1999 and obtained Captain Ockman's statement on January 7, 2000.

Holton received treatment for his injuries and defendant paid him maintenance and cure benefits uneventfully until March, 2000. Holton did not hire counsel until March 29, 2000 and did not file suit until May 15, 2000. During written discovery, Holton's counsel requested a copy of Captain Ockman's statement, but defense counsel refused to provide it

explaining that the statement was protected workproduct prepared in anticipation of litigation. Counsel deposed Captain Ockman on August 28, 2000. Before the deposition, however, United States Magistrate Judge Chasez convened a status conference at the request of plaintiff's counsel to discuss the production of Captain Ockman's statement. Magistrate Chasez ruled that Captain Ockman should first be deposed without reviewing his statement and thereafter the statement could be given to him and plaintiff's counsel in order to resolve any further issues in the deposition. Defense counsel noted its objection and indicated their intent to appeal the Magistrate Judge's order.

Defendants sought review of the Magistrate's Order from this Court. Defendants requested oral argument on whether Ockman's statement was protected from discovery as a document prepared in anticipation of litigation pursuant to Federal Rule of Civil Procedure 26(b)(3). Plaintiff responded that Ockman's statement is not protected by Rule 26(b)(3) because it was taken in advance of anticipation of litigation and that plaintiff will suffer undue hardship if the statement is not produced because Ockman's deposition testimony is not a substantial equivalent to the statement.

The Court heard oral argument on the motion for reconsideration on September 13, 2000. The Court ruled that the defendants must submit the statement for in-camera review. On October 11, 2000, after in-camera inspection of the statement, the Court ordered the defendant to produce the statement to the plaintiff. Defendants requested from the Court reasons for its Order so that they may seek a writ of mandamus on the issue of producing the statement.

II. ANALYSIS

*2 Defendants have asked this Court to review an order of a United States Magistrate Judge concerning a pretrial matter. The standard of review of a Magistrate's order concerning pretrial matters is "clearly erroneous or contrary to law" pursuant to title 28, United States Code, section 636(b)(1)(A). See Castillo v. Frank, 70 F.3d 382, 385 (5th Cir.1995).

The statement is undiscoverable work product only if the defendant can show that it was "prepared in anticipation of litigation." Fed.R.Civ.P. 26(b)(3). If it was prepared in anticipation of litigation, the plaintiff must demonstrate that it has "substantial need" for the privileged document and that they could not procure

equivalent evidence without undue hardship. Id.

A. Defendants have failed to prove the statement was prepared in anticipation of litigation.

To prevent discovery of Ockman's statement, the defendants must prove that the statement was "prepared in anticipation of litigation." Fed.R.Civ.P. 26(b)(3). Defendants assert that the Supreme Court's rule in Hickman v. Taylor has been extended to the point that Ockman's statement, which was given to a third-party investigator, is entitled to the same "degree of privacy" as a statement taken by an attorney preparing a case for litigation. 329 U.S. 495, 510 (1947). The defendants note that the Supreme Court established the Hickman rule to protect an attorney's work whether it was reflected in "interview, statements, memorandum, correspondence, briefs, and mental impression." 329 U.S. at 511. If such material were available to an opposing counsel, inefficiency and unfairness "would inevitably develop in the giving of legal advice and in the preparation of cases for trial." Id.

The defendants do not, however, take the final step of demonstrating how the release of an eye-witness's statement, taken by a third-party investigator who was hired by an insurance company but is not an attorney, will cause inefficiency and unfairness in future legal proceedings. The Hickman rule is intended to allow attorneys to communicate freely with their clients, including eliciting information that will support certain legal theories or exclude other theories from consideration. A third-party insurance adjustor attempting to ascertain exactly what happened from eye-witnesses is not in the same position as an attorney. The Court has reviewed Ockman's statement in-camera and is confident that the statement is free of the thoughts and impressions of counsel that Hickman is intended to protect.

Of course, this is not to say that a statement given to a non-attorney cannot be protected under Rule 26(b)(3). Defendants cite Hamilton v. Canal Barge Company, Inc. to prove that Ockman's statement is privileged work product. See 395 F.Supp. 975 (E.D.La.1974). In Hamilton, this Court found that statements of eyewitnesses to an accident, taken by the defendant's insurance adjuster on the day of the accident, were "clearly" material prepared in anticipation of litigation. 395 F.Supp. at 976. However, Hamilton did not establish a bright-line rule that every statement taken by a defendant's insurance adjuster is prepared in anticipation of litigation. Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not privileged work product. See Fed.R.Civ.P. 26(b)(3) Advisory Committee Notes (1970); United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir.1982).

*3 In Hamilton, a serious accident caused the plaintiff fatal injuries. The defendants' insurer was on the scene hours after the accident to begin collecting information for the lawsuit that would inevitably be filed. Based on those facts, the Court found that the insurer was not acting in the ordinary course of adjusting a potential claim but was taking statements clearly in anticipation of litigation. See Hamilton, 395 F.Supp. at 976. However, there is a vast difference between the investigation of the death of an employee, which is an extraordinary and tragic event, and the investigation of a non-life threatening injury on a barge, which is a fact of life for vessel owners and their crew members.

In the present case, the facts do not point to inevitable litigation or even that the defendants were paying specific attention to prospective litigation when Ockman's statement was taken. The plaintiff had no prior history of litigation and had neither obtained counsel nor filed suit when Ockmans's statement was taken. The plaintiff did not seek medical treatment until six days after the incident and the investigator did not take Ockman's statement until thirty days thereafter.

Insurance companies regularly take statements from witnesses during the routine adjustment of a potential insurance claim. The collection of Ockman's statement during the ordinary course of business need not raise the protections afforded to attorney workproduct despite defendants' claim that prudent parties anticipate litigation and act with that possibility in mind. Defendants' assertions cannot protect the witness's statement from discovery absent a showing that their investigations were conducted primarily for the purposes of future litigation and outside the ordinary course of investigating a potential insurance claim.

B. Even if the statement is privileged workproduct, Ockman's statement would nonetheless be producible.

Even if the statement qualified as privileged work product, the privilege would be defeated because plaintiff has demonstrated both the substantial need and the undue hardship necessary for discovery of work product. See Fed.R.Civ.P. 26(b)(3).

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

The reasoning of Hamilton supports production of the statement. In Hamilton, the Court recognized that discovery is intended to be a search for the truth and that eye-witness statements are one way of providing that truth. The court explained that "[t]he notion that the statement taken nearest to the event will most accurately reflect the perception the witness had of the event is amply supported by psychological studies, as well as by common sense." 395 F.Supp. at 977. Even though the statements in Hamilton were taken the same day as the accident and not a few weeks later as in the present case, the reasoning of Hamilton still supports production. Memories fade over time, and during the intervening nine months, Ockman may have forgotten details that could be important in this litigation.

*4 The Fifth Circuit has recognized that statements taken from the witnesses shortly after accidents are 'unique catalysts in the search for truth' in that they provide an immediate impression of the facts that cannot be recreated or duplicated by a deposition that relies upon memory, and many courts have held that the mere lapse of time in itself is enough to justify production of the statements. Southern Ry. Co. v. Lanham, 403 F.2d 119, 128 (5th Cir.1968) (citations omitted). Even where a witness is available for interrogation by the plaintiff, the facts disclosed would not necessarily be identical to that witness's original statement. Id. at 127. The Fifth Circuit has also noted that written statements from witnesses who were employed by an adverse party appear "to create a situation of inequality between the parties with respect to gathering accurate statements from [the employees]." Id. at 129.

In this case, the plaintiff and Captain Ockman are the only two witnesses to the accident. Depriving the plaintiff of Ockman's statement will deprive him of Ockman's freshest and most accurate account of the incident. Although Ockman gave the statement one month after the accident, a greater lapse in time creates the need to produce statements taken near the time of the event. See Hamilton, 395 F.Supp. at 977. After comparing Ockman's statement and deposition testimony in-camera, as suggested by the Hamilton court in situations where the witness is available for later deposition, the Court finds that Ockman's statement does contain additional information and is not the substantial equivalent of the deposition testimony.

It is in the interests of justice to allow each side access to available evidence, particularly when the evidence is relevant, not privileged, and the access would not result in hardship or expense to either party. See, e.g., United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958) (stating that the rules of discovery and pretrial procedure "make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.") To restrict access to the statement in this case would encourage gamesmanship and promote procedure over substance.

### III. CONCLUSION

For the foregoing reasons, defendants have not shown that the Magistrate's order to produce Ockman's statement was clearly erroneous or contrary to law, and therefore, defendants' motion to reconsider the Magistrate's order is DENIED and defendants are ORDERED to produce the statement to the plaintiff.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

1999 WL 694103
(Cite as: 1999 WL 694103 (E.D.La.))
H

Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.

TRICO MARINE ASSETS, INC., and Trico Marine
Operators, Inc.
v.
ALPHA MARINE SERVICE, L.L.C. and Edison
Chouest Offshore Holdings, L.L.C., in
personam, and the M/V C-Captain, in rem

Nos. Civ.A. 98-0834, Civ.A. 980835, Civ.A. 980913.

Sept. 3, 1999.

RULING ON MOTION

LIVAUDAIS, J.

*1 Limitation of liability plaintiffs Trico Marine
Assets, Inc., and Trico Marine Operators, Inc.
(collectively referred to as "Trico"), have filed a
motion to review the August 13, 1999 decision of the
Magistrate Judge compelling Trico to provide copies
of certain written statements taken from witnesses
immediately after the event. Limitation defendants/
claimants Alpha Marine Service, L.L .C., and Galliano
Marine Service, L.L.C. (collectively "Galliano")
oppose the motion.

On March 15, 1998, two offshore supply vessels
owned by Trico and Galliano collided in the Gulf of
Mexico. The BASS RIVER, the vessel owned by
Trico, capsized and sank, resulting in death and
personal injury, as well as property damage. Within
hours after the casualty, Trico had its counsel and other
representatives on the scene conduct an investigation,
which lasted for several days after the collision. A
team of divers, liftboats, and barges were assembled to
attempt to salvage the BASS RIVER. The National
Transportation Safety Board, in the course of its
investigation, instructed Trico to have its divers note
the position of the watertight doors aboard the BASS
RIVER.

Three days after the collision, when the divers
surfaced after their initial dive, Trico's attorneys
obtained written statements from them. During the
attempts to salvage the BASS RIVER, the salvage
efforts mangled the vessel and destroyed evidence,
including particularly the position of the watertight
doors.

Galliano requested copies of these written statements
from the three SCUBA divers who examined the
BASS RIVER. Trico objected to the discovery request
on the grounds that they were taken in anticipation of
litigation and are protected by the work product
doctrine.

The Magistrate Judge carefully considered Galliano's
request, holding that:

For a witness statement to fall within the protection
of the work product doctrine, the statement must
be taken in anticipation of litigation. In order for a
party to obtain statements that may be protected as
work product, the "party must show first that he
'has substantial need of the materials in the
preparation of his case' and second that 'he is
unable without undue hardship to obtain the
substantial equivalent of the materials by any other
means." ' Hamilton v. Canal Barge Co., Inc., 395
F.Supp. 975, 976 (E.D.La.1974).

Trico argues that Galliano may obtain the
information by deposing the divers, but it has been
months since the diving expedition, and as the
Hamilton court noted: "though there are cases to
the contrary, there is now substantial authority for
the proposition that statements taken from
witnesses close to the time of the occurrence are
unique, in that they provide an immediate
impression of the facts. On this view, mere lapse of
time is in itself enough to justify discovery." '

In the present case, the divers' statements were
taken by Trico, and Trico was in fact anticipating
litigation. The divers were in a unique position to
observe the watertight doors, which are relevant to
the vessel's sinking. Galliano has a substantial need
in this case to obtain the information and it is
precluded from obtaining that information by the
destruction of the vessel during salvage operations.

*2 Given Galliano's need and the inability of
Galliano to obtain accurate information from
another source, the court orders Trico to produce
the divers' statements, redacted to reflect
information regarding their observations of the
position of the watertight doors.

Rec. Doc. No. 80, entered Aug. 13, 1999. The
Magistrate also noted that the divers were performing
an investigatory function when directed to note the
position of the watertight doors by the National
Transportation Safety Board.

The determination of this pretrial nondispositive
motion was referred to the Magistrate Judge under 28

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

1999 WL 694103
(Cite as: 1999 WL 694103, *2 (E.D.La.))

Page 2

U.S.C. § 636(b)(1)(A). In order to reconsider the decision of the Magistrate Judge on such a motion, the mover must demonstrate that the order is clearly erroneous or contrary to law.

The issue is whether in these circumstances, the Magistrate Judge's order compelling the production of the statements concerning the position of the watertight doors, without requiring the deposition of these witnesses first, was clearly erroneous or contrary to law. The Fifth Circuit has considered this question in the context of statements taken of witnesses who are employees or agents of a party shortly after an accident, in Southern Railway Company v. Lanham, 403 F.2d 119 (5th Cir.1969). In that case, the plaintiffs sued a railroad for negligent homicide when three of their family members were killed when the car in which they were riding collided with the defendant's train. The defendant conducted an investigation of the accident shortly after it occurred and obtained statements from the train crew three days after the accident. The Fifth Circuit analyzed the issue as follows:

> In the case before us, appellees sought and obtained an order compelling production for the statements of the train crew taken shortly after the occurrence of the accident by appellant's claim agent. There can be no doubt that information concerning the circumstances of the accident from those closely involved is important, even essential to the proper preparation of the appellees' case, especially since appelles' decedents were killed instantly and cannot provide the account of the facts. The issue, however, is whether appellees need the written statements in preparation of their case, or conversely, whether the desired information can be secured from the witnesses themselves through interviews or depositions.

403 F.2d at 127 (citations omitted).

The Lanham court reviewed the decisions holding that the availability of the witnesses obviates a good cause showing, but rejected them, noting that "[t]his view, however, is unduly narrow, inasmuch as the real question is whether the movant can obtain the facts without production of the documents containing the original statements." Id. The Lanham court concluded:

> In this case, it is doubtful that appellees could presently obtain a full and accurate disclosure of the facts through depositions of the train crew. In the first place, ten months elapsed before the suit

was filed, and almost another year intervened before the interrogatories were answered and the motion to produce was entertained by the court. Statements taken at that point are likely to be unreliable due to the lapse of time. For this reason, statements taken from the witnesses shortly after the accident constitute 'unique catalysts in the search for truth,' in that they prove an immediate impression of the facts that cannot be recreated for duplicated by a deposition that relies upon memory, and many courts have held that the mere lapse of time in itself is enough to justify production of the statements. (Emphasis added).

*3 Thus, even though the train crew and each of them might now be made available for interrogation by the plaintiff, the facts thereby disclosed would not necessarily be identical with the statements originally made by said train crew. Much time has elapsed, the memories of the witnesses involved would necessarily be dimmed with reference to the specific details of the events about which they originally had made statements.

Id. at 128. The court also recognized that the fact that written statements were from witnesses who were employed by the appellant appears to create a situation of inequality between the parties with respect to gathering accurate statements from the crew." Id. at 129.

Finding good cause, the Fifth Circuit agreed with the trial court that good cause, as contemplated by Fed. R. Civ. Pro. 34, was established, requiring production of the documents. It further rejected the argument that the plaintiffs could have deposed the witnesses earlier and their failure to act sooner erodes the good cause established, stating that "[t]he fact that one party acts swiftly and first obtains the facts, by the taking of statements or otherwise, gives that party no inherent right to secret those facts and withhold them from the adverse party. If the adverse party can demonstrate good cause for the production of these facts, the Court should order the facts to be produced." Id. at 130.

This district followed the Lanham decision in Hamilton v. Canal Barge Company, 395 F.Supp. 975 (E.D.La.1974), observing that "almost contemporaneous eyewitness accounts are discoverable" because "the plaintiffs are completely unable to obtain their substantial equivalent, not simply unable to obtain them without undue hardship." 395 F.Supp. at 978.

Trico argues that the Magistrate Judge's decision,

1999 WL 694103                                                                  **Page 3**
(Cite as: 1999 WL 694103, \*3 (E.D.La.))

which follows **Lanham** and Hamilton, is contrary to the holding in In re International Systems and Controls Corporation Securities Litigation, 693 F.2d 1235 (5th Cir.1982). That case, with concerns the application of the attorney-client privilege in the context of corporate-shareholder litigation, is not inconsistent with the above-cited Fifth Circuit opinions, but is distinguishable on its facts. In the present situation, which is similar to those in **Lanham** and Hamilton, a single accident occurred and the witnesses were in a particular and unique position either during or shortly after the event which afforded them the opportunity to observe and obtain information which is critical to the search for truth. In the securities case, events occurred over the course of a number of years and the statements sought to be discovered were not contemporaneous.

Consider the entire matter, the Court finds that the mover has not met its burden of demonstrating that the Magistrate Judge's decision was clearly erroneous or contrary to law. In the Court's view, the Magistrate Judge's decision was reasoned, followed analogous jurisprudence on the same question, and furthered the search for the truth, which is at the core of the interests of justice.

\*4 Accordingly, for the above and foregoing reasons,

IT IS ORDERED that the motion of Trico to review the August 13, 1999 decision of the Magistrate Judge be and is hereby DENIED.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works